652 A.2d 396

**COMMONWEALTH of Pennsylvania,**

v.

**James NELSON, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1994.

Filed Jan. 13, 1995.

Michael C. Schwartz, Asst. Public Defender, Philadelphia, for appellant.

Louis D. Lappen, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

OLSZEWSKI, Judge:

Appellant James Nelson and three others were charged with crimes stemming from a string of robberies that occurred on September 28, 1991. After a bench trial before the Honorable Anthony J. DeFino of the Court of Common Pleas of Philadelphia County, appellant was found guilty of robbery, burglary, theft, criminal trespass, recklessly endangering another person, aggravated assault, possessing an instrument of crime, criminal conspiracy, and firearms violations. The trial court denied post-verdict motions and sentenced appellant to an aggregate term of five to ten years incarceration. This appeal followed.

Appellant presents two claims for review: (1) whether the trial court erred in denying his pre-trial motion to dismiss based on Rule 1100; and (2) whether the trial court abused its discretion and violated appellant's due process and Sixth Amendment rights by admitting a witness's preliminary hearing testimony at trial.

## I.

Rule 1100 of the Rules of Criminal Procedure sets out the number of days within which a criminal defendant must be brought to trial. Pa.R.Crim.P. 1100. If a defendant is released on bail, Rule 1100 requires the trial to commence within 365 days from the date of the Criminal Complaint. Pa. R.Crim.P. 1100(a)(3). Rule 1100, however, also allows for excludable time, which is not counted in determining the "run date" by which the defendant must be brought to trial. Pa. R.Crim.P. 1100(c)(3). If a defendant requests a pre-trial lineup, the time elapsed during the course of that delay is excludable. *See* Pa.R.Crim.P. 1100(c)(3)(ii); *see also Commonwealth v. Potts,* 368 Pa.Super. 408, 511–13, 534 A.2d 501, 503 (1987), *appeal denied,* 520 Pa. 603, 553 A.2d 966 (1988)

(finding that a defendant's request for a line-up resulted in 37–day delay, all of which was excludable time under Rule 1100).

In the present case, the criminal complaint was filed against appellant on January 31, 1992, resulting in an original Rule 1100 run date of January 29, 1993. Appellant's trial began on February 25, 1993; 27 days after the original run date. Appellant requested a line-up,[1] however, which delayed the start of the preliminary hearing by a minimum of 35 days of excludable time[2] and resulted in an amended Rule 1100 run date of March 5, 1993. Since appellant's trial began on February 25, 1993, we find no Rule 1100 violation.

## II.

Appellant's second claim arises out of the testimony admitted at trial. At appellant's preliminary hearing, one of his alleged co-conspirators, Michael Sudler, testified that appellant was the driver of the "get away" van on September 28, 1991, when the string of robberies was committed. This testimony was significant because appellant was never identified by the victims. Appellant was held over for trial, which began on February 25, 1993. At trial, Sudler was called to the stand, but refused to testify. Based on his refusal to testify, the trial court found that Sudler was unavailable and admitted the transcript of his preliminary hearing testimony. Appel-

1. It is unclear exactly when the defense requested the line-up; however, the Quarter Sessions Report lists a continuance on February 14, 1992, "[j]ust for status of line-up". Therefore, we can conclude that the line-up was requested on or before February 14, 1992.

2. The preliminary hearing was first scheduled for February 7, 1992. On that date, the case was listed as "protracted" and continued until February 14, 1992. The case was again continued on February 14, 1992, because the Commonwealth was not prepared to address the line-up issue. On February 19, 1992, the line-up issue was mooted and the case was continued until the earliest possible date for a preliminary hearing: March 26, 1992. The delay from the date of the defense's request for a line-up until the earliest possible date to resume the hearing .after the line-up issue was resolved is excludable time. If February 14 is used as the date of the defense's request for a line-up, the excludable time amounts to 40 days. Even if we charge the five days between February 14 and 19 to the Commonwealth for not being prepared, the delay still amounts to 35 days.

lant asserts that the transcript should not have been allowed into evidence.

■ The admissibility of evidence is a matter within the trial court's discretion, and its decision will not be upset absent an abuse of discretion. *Commonwealth v. Wharton,* 530 Pa. 127, 144–46, 607 A.2d 710, 719 (1992); *Commonwealth v. Smith,* 436 Pa.Super. 277, 285, 647 A.2d 907, 911 (1994). While hearsay statements are generally not admissible, there are numerous exceptions to this general rule. *See Commonwealth v. Bujanowski,* 418 Pa.Super. 163, 169, 613 A.2d 1227, 1230 (1992), *appeal denied,* 533 Pa. 642, 622 A.2d 1374 (1993). One such exception is for former testimony. It allows the "admission of prior recorded testimony from a preliminary hearing provided that: (1) the witness responsible for that testimony is presently unavailable; (2) the defendant had counsel; and (3) the defendant had a full and fair opportunity to cross-examine the declarant during the earlier proceeding". *Smith,* 436 Pa.Super. at 286, 647 A.2d at 911. At issue in the present case is whether the witness was unavailable and whether the defendant had a full and fair opportunity to cross-examine.

■ In determining the unavailability of a witness, the appropriate question is whether the prosecution has "made a good faith effort to produce the live testimony of the witness and, through no fault of its own, is prevented from doing so." *Id.; see also Commonwealth v. Melson,* 432 Pa.Super. 1, 11–13, 637 A.2d 633, 638 (1994). In this case, there can be no doubt that the prosecutor made every reasonable attempt to produce live testimony. The record illustrates repeated attempts by the prosecution to elicit a response from Sudler. N.T. 3/22/93 at 16–32. The prosecutor asked numerous questions, repeated questions, offered notes of testimony to refresh recollection, and promised not to ask any questions about Sudler's unrelated homicide indictment. *Id.* In response, Sudler steadfastly refused to answer any questions or to read any prior statements to refresh his recollection. *Id.* Finally, the prosecutor asked the court to hold Sudler in contempt.

The court complied, but Sudler still refused to testify. *Id.* at 28. In this case, there was nothing more that the prosecution could do. Therefore, we find that the Commonwealth made a good faith effort to produce Sudler's live testimony and Sudler was properly found unavailable.

The remaining issue is whether appellant had a full and fair opportunity to cross-examine Sudler at the preliminary hearing. Appellant asserts that he lacked four crucial pieces of evidence: (1) a police report indicating that Sudler could have been driving the van; (2) a police summary of Sudler's statements indicating that co-conspirator Franklin directed the group to a victim's house; (3) a copy of the written plea agreement between Sudler and the Commonwealth; and (4) information regarding Sudler's recent crimes and pending charges.

A copy of the written plea agreement would not have added anything to appellant's cross-examination of Sudler. Appellant was already aware that Sudler had struck a deal with the Commonwealth and took the opportunity at the preliminary hearing to question Sudler at length regarding a possible bias. The specifics of that deal, as set forth in a written agreement never actually signed by Sudler, would not have provided any stronger ammunition for cross-examination purposes.[3]

Similarly, the evidence of Sudler's other recent crimes and pending charges would not have added anything to appellant's opportunity to cross-examine Sudler. Appellant knew that Sudler had been charged with the September 28th robberies. He knew that Sudler had struck a deal with the Commonwealth. He used his opportunity at the preliminary hearing to fully explore any possible bias on Sudler's part. Any information on additional, unrelated crimes[4] would have been cumula-

[3]. The written agreement was later introduced at trial, so the fact-finder did have the opportunity to examine the specifics of the agreement. N.T. 3/22/93 at 47, 50.

[4]. Michael Sudler was charged with simple assault on February 26, 1992 and two additional robberies, one of which involved a shooting, on October 15, 1991. N.T. 3/22/93 at 9–11, 51–53. He was also indicted on an unrelated homicide charge after the preliminary hearing in this case. *Id.*

tive to the evidence already available. *See Commonwealth v. Lane*, 533 Pa. 276, 279–81, 621 A.2d 566, 568 (1993) (holding that trial court erroneously prohibited defense from cross-examining witness on all his crimes, but defense still had full and fair opportunity to cross-examine because jury was already aware that witness had pending crimes which could give rise to a pro-Commonwealth bias).

The two remaining pieces of evidence are more problematic, as appellant is not claiming that the evidence itself could be used to impeach Sudler;[5] rather, appellant claims that knowledge of the evidence would have allowed counsel to ask more pointed questions during cross-examination. While it is certainly true that this information could have given rise to more pointed interrogatories, the question remains whether the lack of such information constitutes a violation of appellant's Sixth Amendment and due process rights. We find that it does not.

Our Supreme Court, in *Commonwealth v. Bazemore*, stated that it would be a denial of due process and a violation of the Sixth Amendment to allow former testimony if the defendant was not allowed to test the reliability of that testimony on the prior occasion. 531 Pa. 582, 614 A.2d 684 (1992). The key factor in *Bazemore* was that the Commonwealth's sole witness had given police a prior inconsistent statement that presented a completely different version of the events in question.

---

5. The first piece of evidence, a police report based on testimony of other witnesses who saw Sudler exiting from the driver's side of the van, could indicate that Sudler rather than appellant was driving the van. However, as a police summary of the out-of-court statements of third-party witnesses, it is classic hearsay that would not be admissible either for its substantive value or for impeachment purposes. *Commonwealth v. Baez*, 494 Pa. 388, 392–95, 431 A.2d 909, 912 (1981) (holding that a witness cannot be confronted with the out-of-court statements of other witnesses on cross-examination). The second piece of evidence was a summary of Sudler's statements to the police, in which Sudler indicated that co-conspirator Franklin directed them to the victim's house. Since this statement does not truly contradict Sudler's testimony that appellant was involved in the planning of the house robbery, it is not inconsistent and could not be used to impeach Sudler. *Commonwealth v. Bailey*, 322 Pa.Super. 249, 263, 469 A.2d 604, 611 (1983) (holding that a witness cannot be impeached with his or her prior statements unless such statements are truly inconsistent).

When the Commonwealth failed to disclose this crucial impeachment evidence to the defense prior to the preliminary hearing, it denied the defense a full and fair opportunity to cross-examine. Similarly in *Smith*, we held that a defendant did not have a full and fair opportunity to cross-examine when he was denied certain information regarding the witness's prior criminal history and pending criminal charges at a preliminary hearing. 436 Pa.Super. at 289–294, 647 A.2d at 913–15. We found that such information, which could test the possible bias of the witness, was essential if the defendant was to have a full and fair opportunity to cross-examine. *Id.* In both of these cases, courts were dealing with the kind of classic impeachment evidence that is at the heart of the right of confrontation.

In the present case, appellant complains that he was unable to ask Sudler if he, rather than appellant, was driving the van and if appellant was involved in the planning of the house robbery. Sudler had already testified that appellant was the driver of the van and that appellant had been involved in the planning of the house robbery. If asked again, Sudler would have presumably responded in the same manner and appellant would have been unable to confront Sudler with the police reports implying otherwise. Unlike the right to confront a witness with his own prior inconsistent statement, or with his own criminal record and possible bias, the right to pose additional questions, which the witness has already answered in his direct testimony, involves only limited confrontation and does not lie at the heart of the Sixth Amendment. In such an instance, one can adequately impeach the witness indirectly by calling other witnesses to contradict his testimony.[6]

In sum, we find that the trial court did not abuse its discretion in finding that appellant had sufficient information

**6.** At trial, appellant did examine the witnesses who saw Sudler exit from the driver's side of the vehicle and the fact-finder had the opportunity to consider that evidence in assessing Sudler's credibility. N.T. 2/25/93 at 119–20, 136–37, 165–67. Similarly, the summary of Sudler's statements to police regarding the planning of the house robbery were admitted at the post-verdict motion hearing, so the fact-finder also had the benefit of that evidence. Brief for appellant, Exhibit B, at 17–18.

to allow for a full and fair opportunity to cross-examine. Appellant knew that Sudler's testimony was the Commonwealth's most substantial piece of evidence. He had a strong motive and a full and fair opportunity to cross-examine this key witness at the preliminary hearing. His counsel fully challenged Sudler's credibility and potential bias based on evidence that was already available. The additional evidence sought by appellant would not have substantially affected the exploration of Sudler's credibility or bias during cross-examination. Therefore, we find that appellant's Sixth Amendment and due process rights were not violated by the admission of this former testimony.

Judgment of sentence affirmed.