668 A.2d 536

**COMMONWEALTH of Pennsylvania**

v.

**Efrain CRUZ–CENTENO, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1995.

Filed Dec. 4, 1995.

100

Peter C. Bowers, Philadelphia, for appellant.

Kathy L. Echternach, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

Efrain Cruz–Centeno was tried non-jury and was found guilty of third degree murder and possession of an instrument of crime. Post-trial and supplemental post-trial motions were denied, and Cruz–Centeno was sentenced to serve a term of imprisonment for not less than eight (8) years nor more than sixteen (16) years for third degree murder and a concurrent term of imprisonment for not less than six (6) months nor more than one (1) year for possessing an instrument of crime. On direct appeal from the judgment of sentence, Cruz–Centeno argues that: (1) the evidence at his trial was legally insufficient to sustain his conviction for third degree murder; (2) the verdict was contrary to the weight of the evidence; (3)

the trial court erred by allowing into evidence the preliminary hearing testimony of a Commonwealth witness who did not testify at trial; and (4) his sentence for third degree murder was excessive and unreasonable. After careful review, we affirm the judgment and sentence.

On June 28, 1993, shortly after midnight, appellant was sitting on the steps at the corner of Palethorpe and Estaugh Streets in Philadelphia. Sitting with appellant was Claudio Ayala, an older man, who was very intoxicated at the time. Appellant, according to the Commonwealth's evidence, was playing with a loaded revolver, pointing it in the air and spinning the barrel. The victim, Ronald Johnson, and Luis Perez were walking along Palethorpe Street, and, as they were passing appellant and Ayala, Johnson stopped and asked appellant, "What's up?" Appellant replied, "Nothing much," and, then, proceeded to point the gun at Johnson and shot him in the left chest from a distance of approximately one foot. The bullet passed through both of the victim's lungs and his heart, causing his death. After the shooting, Perez observed appellant laughing. Appellant then walked to his home, and, a short time later, he returned to the scene of the shooting and was heard to say that the shooting had been accidental.

When police arrived on the scene, appellant was identified by Perez as the shooter and arrested by police. Police also took Claudio Ayala into custody, but he was too intoxicated to be interrogated. The following morning, Ayala said he remembered nothing about the shooting. Perez testified against appellant at the preliminary hearing in this case, but, the Commonwealth was unable to locate him at the time of trial. After a finding was made that Perez was an unavailable witness, the trial court allowed the Commonwealth to introduce his preliminary hearing testimony into evidence at trial.

Both appellant and his wife, Luz Galeano, testified at trial that the gun discharged while appellant was struggling with Claudio Ayala. According to appellant, he had been sitting on his steps, when Ayala approached him and showed him a gun. Ayala said that the gun was not loaded and pointed it at appellant's face. Appellant grabbed the gun from Ayala and

pointed it up in the air. At this point, appellant said, Ayala grabbed his hand and attempted to regain possession of the gun. Then, appellant testified, the gun discharged and the victim was shot. When appellant placed the gun on the ground, Ayala took it and ran from the scene. Despite police searches of both appellant's and Ayala's homes, the gun was never found. Appellant further testified that the victim had been his friend and that he had never intended to kill him.

With respect to appellant's challenge to the sufficiency of the evidence, our standard of review is as follows:

In evaluating a challenge to the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. See: *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). In addition, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

*Commonwealth v. Nicotra,* 425 Pa.Super. 600, 603–604, 625 A.2d 1259, 1261 (1993).

Appellant asserts that the evidence at trial was more consistent with the defense theory that the gun accidentally discharged during a struggle than with the Commonwealth's theory of the case that he had intentionally pointed the gun at the victim. Therefore, appellant contends, the Commonwealth failed to prove beyond a reasonable doubt that he acted with the requisite malice to sustain a conviction of third degree murder.

"The elements of third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder." *Commonwealth v. Hill,* 427 Pa.Super. 440, 444, 629 A.2d 949, 951 (1993). "Malice is the essential element of third degree murder[,]" *Commonwealth v. Mercado,* 437 Pa.Super. 228, 245, 649 A.2d 946, 955 (1994), "and is the distinguishing factor between murder and manslaughter." *Commonwealth v. Smouse,* 406 Pa.Super. 369, 379, 594 A.2d 666, 671 (1991). The Pennsylvania Supreme Court has defined malice in the following terms:

'The distinguishing criterion of murder is malice aforethought. But it is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.'

*Commonwealth v. Thomas,* 527 Pa. 511, 514, 594 A.2d 300, 301 (1991), quoting *Commonwealth v. Drum,* 58 Pa. 9, 15 (1868). Accordingly, it has been observed "that malice may be found where the 'actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or

serious bodily harm.'" *Commonwealth v. Seibert,* 424 Pa.Super. 242, 250, 622 A.2d 361, 364 (1993), quoting *Commonwealth v. Young,* 494 Pa. 224, 228, 431 A.2d 230, 232 (1981). "Malice may be inferred from 'the attending circumstances of the act resulting in the death.'" *Commonwealth v. Lee,* 426 Pa.Super. 345, 350, 626 A.2d 1238, 1241 (1993), quoting *Commonwealth v. Gardner,* 490 Pa. 421, 424, 416 A.2d 1007, 1008 (1980). "Malice is properly implied when a deadly weapon is directed to a vital part of the [victim's] body." *Commonwealth v. Palmer,* 448 Pa. 282, 288, 292 A.2d 921, 923 (1972). See also: *Commonwealth v. Hardcastle,* 519 Pa. 236, 250, 546 A.2d 1101, 1107 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). Indeed, "the inference from the use of a deadly weapon upon a vital part of the body *alone* is sufficient to establish malice." *Commonwealth v. Torres,* 396 Pa.Super. 499, 503, 578 A.2d 1323, 1325 (1990) (emphasis added). See: *Commonwealth v. Carbone,* 524 Pa. 551, 562–563, 574 A.2d 584, 590 (1990).

When the evidence is viewed most favorably to the Commonwealth, it establishes that appellant, while playing with a loaded gun, pointed it at the victim and pulled the trigger. This was clearly sufficient to support a finding of malice. Moreover, even if appellant had not been fully aware that the gun was loaded, his actions would still have risen to the level of legal malice necessary to support a third degree murder conviction. See: *Commonwealth v. Young, supra* at 229, 431 A.2d at 230 ("By intentionally aiming a gun at [the victim] without knowing for a certainty that it was not loaded, appellant exhibited that type of cruel and wanton conduct of which legal malice is made."). Here the trial court found incredible the testimony of appellant and his wife that the gun had accidentally discharged while appellant had been struggling with Claudio Ayala. The court's finding in this regard is not undermined by the failure of the Commonwealth to produce evidence explaining the reason for the shooting. "The Commonwealth need not prove motive in order to establish the existence of malice." *Commonwealth v. D'Ambro,* 500 Pa. 303, 308 n. 5, 456 A.2d 140, 143 n. 5 (1983). See also:

*Commonwealth v. Manchas,* 430 Pa.Super. 63, 73, 633 A.2d 618, 623 (1993). Suffice it to say that the trial court's verdict was supported by evidence legally sufficient to sustain a conviction for third degree murder.

Appellant further contends that the verdict of guilty of third degree murder was so contrary to the weight of the evidence that he should have been granted a new trial. He asserts that the Commonwealth's evidence was inherently unreliable and inconsistent and that the version of events testified to by defense witnesses was a more plausible interpretation of the evidence.

Our review of challenges pertaining to the weight of the evidence supporting a conviction is governed by the following principles:

"A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Taylor, supra* 324 Pa.Super. at 425, 471 A.2d at 1230. The decision whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Hunter,* 381 Pa.Super. 606, 617, 554 A.2d 550, 555 (1989). "A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the [ ] verdict is so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial [ ] imperative so that right may be given another opportunity to prevail." *Commonwealth v. Whitney,* 511 Pa. 232, 239, 512 A.2d 1152, 1155–1156 (1986). "The role of an appellate court in reviewing the weight of the evidence is very limited." *Commonwealth v. Sanders,* 426 Pa.Super. 362, 367, 627 A.2d 183, 185 (1993). "The purpose of that review is to determine whether the trial court abused its discretion and not to substitute [the reviewing] Court's judgment for that of the trial court." *Commonwealth v. Murray,* 408 Pa.Super. 435, 440, 597 A.2d 111, 114 (1991) (en banc). Accordingly, "[w]here the evidence is conflicting, the credibility of the witnesses is solely for the

[trier of fact] and if its finding is supported by the record, the trial court's denial of a motion for new trial will not be disturbed." *Commonwealth v. Larew,* 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981).

*Commonwealth v. Manchas, supra* at 71–72, 633 A.2d at 622–623. In addition, the Pennsylvania Supreme Court has recently observed:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Jackson,* 506 Pa. 469, 475, 485 A.2d 1102, 1104 (1984). We, as an appellate court, cannot substitute our judgment for that of the finder of fact. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we can only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Whitney,* 511 Pa. 232, 239, 512 A.2d 1152, 1155 (1986).

*Commonwealth v. Simmons,* 541 Pa. 211, 229, 662 A.2d 621, 630 (1995).

■ Instantly, it was solely for the trial court, as the finder of fact, to determine the credibility of witnesses and to resolve any conflicts or inconsistencies in the evidence. Our review discloses nothing in the verdict of the trial court that is so shocking to one's sense of justice as to compel the award of a new trial. Therefore, the trial court did not abuse its discretion by refusing to grant appellant a new trial on grounds that the verdict was contrary to the weight of the evidence.

■ Appellant next argues that the trial court committed reversible error by permitting the Commonwealth to introduce into evidence at his trial the preliminary hearing testimony of Luis Perez, whose whereabouts the Commonwealth was unable to ascertain at the time of trial. With respect to the admissibility of similar evidence, the Pennsylvania Supreme Court has "held that 'our common law permits the admission of an unavailable witness' prior recorded testimony from a preliminary hearing, provided the defendant had counsel and a

full opportunity to cross-examine the witness during the earlier proceeding.'" *Commonwealth v. Sandutch*, 498 Pa. 536, 540, 449 A.2d 566, 567 (1982), quoting *Commonwealth v. Scarborough*, 491 Pa. 300, 317, 421 A.2d 147, 155 (1980).

A witness who cannot be found at the time of trial will be deemed unavailable "only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Blair*, 460 Pa. 31, 34, 331 A.2d 213, 214 (1975). See also: *Commonwealth v. Jackson*, 463 Pa. 301, 304–305, 344 A.2d 842, 844 (1975); *Commonwealth v. Nelson*, 438 Pa.Super. 325, 329, 652 A.2d 396, 398 (1995). "The burden of demonstrating such a 'good-faith effort' is on the party seeking to introduce the prior testimony, and '[t]he question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge.'" *Commonwealth v. Walloe*, 472 Pa. 473, 476, 372 A.2d 788, 790 (1977) (Opinion in Support of Affirmance by Pomeroy, J.), quoting *Commonwealth v. Blair, supra* and *Commonwealth v. Miller*, 203 Pa.Super. 511, 516, 201 A.2d 256, 259 (1964). The extent to which the Commonwealth must go in order to produce an absent witness "is a question of reasonableness." *Commonwealth v. Melson*, 432 Pa.Super. 1, 11, 637 A.2d 633, 638 (1994).

Appellant initially argues that the trial court erred by determining that Perez was an unavailable witness because the Commonwealth did not make a good faith effort to secure his presence at trial. According to appellant, despite the existence of an outstanding bench warrant for Perez's arrest, Perez was not taken into custody after he testified at appellant's preliminary hearing and no effort was made to find him until only a few days prior to trial.

With respect to its determination that Perez was an unavailable witness, the trial court reasoned as follows:

Here, the Commonwealth made every possible effort to locate Luis Perez. First, Frances Johnson, the mother of the victim, testified that through her position as a postal worker, she unsuccessfully searched for mail addressed to

Louis Perez or Maria Ortiz, the witness's sister. Ms. Johnson also checked for a change of address, but was informed by her supervisor that none had been made.

Further, Ms. Johnson sent her son to the home of the witness's brother where he was told that the witness was living with his sister on Tampa Street in Philadelphia. Next, the brother of the victim, Coron Johnson, testified that he went to at least seven of the witness's friends and was informed that the witness had moved and hadn't been seen for at least three months.

Detective Dennis Carroll, of the District Attorney's Office confirmed that Perez was not in custody, was not registered to vote, did not have a driver's license and no longer resided at his last known address. Detective Carroll also located Edith Browning, who from the funeral register was thought to know the witness. However, Ms. Browning did not know Luis Perez or his whereabouts. Detective Carroll also reported that his efforts to locate a Maria Ortiz on Tampa Street were unsuccessful.

Lastly, there was a stipulation that Officer Bruce De Noble continually looked for the witness over the weekend preceding trial while on duty in the neighborhood.

Clearly, the Commonwealth made every possible effort to secure Luis Perez's presence at trial. Thus, this Court correctly ruled that the witness was unavailable.

Trial Court Opinion at p. 6.

After careful review, we agree that there was sufficient evidence to permit the trial court to find that a good faith attempt to find Perez had been made by the Commonwealth. The record reflects that the prosecuting attorney began searching for Perez as soon as a date was set for appellant's trial. In this search, she enlisted the help of the victim's mother and brother, as well as police. The effort to find Perez included going to his last known address; interviewing friends and relatives of the witness; searching postal, prison, voting and motor vehicle records; and searching areas he was known to frequent. Thus, even if the prosecuting attorney

could have begun searching for Perez at an earlier date, "we cannot conclude that [her] delay vitiated the extensive efforts to find the witness." *Commonwealth v. Blair, supra* at 36, 331 A.2d at 215. Under the circumstances of the instant case, therefore, we hold that the trial court did not abuse its discretion by determining that Perez was an unavailable witness.

Appellant further contends that Perez's prior testimony should have been excluded because he was denied the opportunity to cross-examine fully the witness at the preliminary hearing in this case. Specifically, appellant asserts that, at the time of the preliminary hearing, the Commonwealth had not provided the defense with a prior inconsistent statement which Perez had made to police or Perez's juvenile record, which included open charges of possession of a controlled substance, possession of a controlled substance with intent to deliver and delivery of a controlled substance. According to appellant, without this information he was precluded from cross-examining Perez regarding his prior, inconsistent version of the shooting and any possible favorable treatment expected by the witness with respect to criminal charges pending against him.

The exception to the hearsay rule which permits the admission of an unavailable witness's prior preliminary hearing testimony "is 'predicated on the "indicia of reliability" normally afforded by adequate cross-examination.' But where ... that 'indicia of reliability' is lacking, the exception is no longer applicable." *Commonwealth v. Bazemore,* 531 Pa. 582, 587, 614 A.2d 684, 687 (1992), quoting *Commonwealth v. Mangini,* 493 Pa. 203, 212, 425 A.2d 734, 739 (1981). Therefore, "in order for prior testimony to be admissible in a subsequent proceeding as substantive evidence against the accused, there must have been a 'full and fair opportunity to cross-examine.'" *Commonwealth v. Thompson,* 538 Pa. 297, 311, 648 A.2d 315, 322 (1994), quoting *Commonwealth v. Bazemore, supra* at 588, 614 A.2d at 687. "The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite

having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial." *Commonwealth v. Thompson, supra* (footnote omitted). However, where the defense, at the time of the preliminary hearing, was denied access to vital impeachment evidence, such as prior inconsistent statements of the witness or the witness's criminal record, a full and fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing. See: *Commonwealth v. Bazemore, supra; Commonwealth v. Nelson, supra* at 331–332, 652 A.2d at 399; *Commonwealth v. Smith,* 436 Pa.Super. 277, 287–294, 647 A.2d 907, 911–915 (1994); *Commonwealth v. Stinson,* 427 Pa.Super. 289, 297–301, 628 A.2d 1165, 1169–1171 (1993).

In *Commonwealth v. Bazemore, supra,* the Supreme Court held as follows:

> [W]here as here, the Commonwealth knows, but does not disclose to the defense at any time prior to preliminary hearing cross-examination of a witness, that the witness has made an inconsistent prior statement and that witness then becomes unavailable to testify at trial, the Commonwealth must suffer the consequences in electing not to disclose that information which is necessary to afford defense counsel the opportunity for a full and fair cross-examination. As we noted in *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983), "[t]he prosecutor, whose duty of course is to seek justice, not merely to convict, ... has an affirmative and continuing duty to disclose exculpatory information to the defendant and to correct false testimony of a witness." (citations omitted). Moreover, "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure [on the part of the Commonwealth] of evidence affecting credibility" violates due process. *Id.,* 500 Pa. at 276, 455 A.2d at 1190.

*Id.* at 590–591, 614 A.2d at 688 (footnote omitted). However, the Court in *Bazemore* made clear that it was not "impos[ing] upon the Commonwealth a duty to disclose that which it is not obligated by law to disclose." *Id.* at 590, 614 A.2d at 688.

In the instant case, Perez made a statement to police immediately after the shooting. Although this statement was not provided to the defense prior to appellant's preliminary hearing, it was read into evidence at trial. Police Officer Brian Geyer testified that he recorded Perez's statement in an interview investigation report, which the officer recited as follows:

An Hispanic male who identified himself as Louie Perez approached me and said he was walking with the deceased, Ronald Johnson, north on Palethorp, when they passed 2 Hispanic males, one sitting on the step of 3433 North Palethorp, and the other male sitting on a chair on the sidewalk. Louie said that the guy across the street, in the custody of 25–Tom–1, shot Ronald Johnson. He said, while walking past them, the male was playing with the gun, spinning the cylinder—

. . . . .

While the cylinder was open. He shut the cylinder, pointed the gun up, and pulled the trigger, shooting Mr. Johnson. The shooter then said, oh, my god, I didn't mean to do that. Louie said the shooter then gave the gun to the little Spanish male sitting in the chair wearing the blue shirt. And it would be a Claudio—

. . . . .

Ayala. This male Ayala was on the scene when we pulled up. This male was then placed in the back of my patrol car.

N.T. November 22, 1993 at pp. 189–191.

It is clear from Officer Geyer's testimony at trial that Perez's post-shooting statement was not recorded verbatim, but, rather, was merely summarized by the officer in an interview report. Under these circumstances, the Commonwealth had no pre-trial duty to disclose the report to the defense. This is so because "statements made by a witness prior to trial are subject to disclosure only when they are signed, adopted or otherwise shown to be substantially verbatim statements of that witness." *Commonwealth v. Brinkley,* 505 Pa. 442, 450, 480 A.2d 980, 984 (1984). Accordingly,

because the Commonwealth had no duty to disclose the summary of Perez's prior statement, it cannot be said that the withholding thereof deprived appellant of the opportunity for a full and fair cross-examination of Perez at the preliminary hearing as contemplated in *Commonwealth v. Bazemore, supra.*

Moreover, the prior statement of Perez, as summarized in Officer Geyer's report, was largely consistent with the testimony given by Perez at appellant's preliminary hearing. The fact that Perez's preliminary hearing testimony contained details not included in the police report did not make the earlier statement inconsistent with the later testimony. "It is well settled that an omission is not the same as an inconsistency." *Commonwealth v. McEachin,* 371 Pa.Super. 188, 204, 537 A.2d 883, 891 (1988), citing *Commonwealth v. Hammond,* 308 Pa.Super. 139, 148, 454 A.2d 60, 64 (1982). " '[M]ere dissimilarities or omissions in prior statements . . . do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements.' " *Commonwealth v. McEachin, supra,* quoting *Commonwealth v. Bailey,* 322 Pa.Super. 249, 263, 469 A.2d 604, 611 (1983). Here, there was nothing in Perez's prior statement that was so inconsistent with his testimony at appellant's preliminary hearing, as to compel a conclusion that appellant was denied the use of vital impeachment evidence at his preliminary hearing. For this reason also, we conclude that appellant was not denied a full and fair opportunity to cross-examine Perez regarding the witness's prior statement to police.

■ Nor do we conclude, under the circumstances of the instant case, that appellant's inability to cross-examine Perez at the preliminary hearing with respect to the witness's outstanding drug charges and open bench warrant deprived appellant of a full and fair opportunity to cross-examine Perez. At trial, Perez's juvenile record was introduced into evidence and was considered by the trial court in assessing the credibility of the unavailable witness. As such, the trial court was aware of the potential that Perez may have been testifying

against appellant out of an expectation for leniency in his own pending case. While cross-examination of Perez with respect to his pending case would have been preferable, there is nothing in the record which suggests that the Commonwealth intentionally withheld this information from the defense prior to the preliminary hearing or that it had been requested by the defense at that time. Cf. *Commonwealth v. Melson, supra* at 16–18 and n. 4, 637 A.2d at 640–641 and n. 4.

Moreover, the cases relied upon by appellant are clearly distinguishable from the instant case. In *Commonwealth v. Bazemore, supra,* at the time of the preliminary hearing, the Commonwealth was considering charging the unavailable witness with crimes, including homicide charges, which arose out of the same incident giving rise to the charges against the defendant. And, in *Commonwealth v. Smith, supra,* the unavailable witness was a confidential informant with a history of having criminal charges against him dismissed. Thus, in both *Bazemore* and *Smith,* the prior records of the unavailable witnesses unambiguously suggested ulterior motives for testifying, and, the failure of the Commonwealth to disclose such information denied the defendants in those cases a full and fair opportunity to cross-examine the unavailable witnesses at their preliminary hearings. In the instant case, however, Perez's prior criminal record, which included only one unrelated open drug case, did not so clearly suggest an interest on Perez's part to testify against appellant. As such, the trial court observed:

> Here, the witness's prior record consisted of charges in juvenile court for possession with intent to deliver a controlled substance on which a bench warrant had been issued on March 12, 1993, four months before the witness testified at the preliminary hearing. To compare this minor, unrelated charge to the severity of the prejudicial criminal records of the witnesses in *Bazemore* and *Smith* would be a travesty of justice.

> "The real basis for the admission of testimony given by a witness at a former trial is to prevent the miscarriage of justice where the circumstances of the case have made it

unreasonable and unfair to exclude the testimony." *Bazemore*, at 587, 614 A.2d at 686.

The fact that defense counsel argued that these charges should affect this Court's determination of the witness['s] credibility [was] carefully weighed against the fact the bench warrant remained open at the time of trial. Thus, this Court concluded that those charges did not present any indications of bias against the defendant.

Therefore, the admission of Luis Perez's preliminary hearing testimony did not result in a constitutional violation of the defendant's right to a fair trial and [was] properly admitted by this Court. *See, Commonwealth v. Melson,* 432 Pa.Super. 1, 17, 637 A.2d 633, 641 (1994).

Trial Court Opinion at p. 11.

At his preliminary hearing, appellant was present and represented by counsel, and he had the opportunity to cross-examine Perez. In fact, during cross-examination of Perez, appellant was able to elicit testimony that appellant and the victim had been acquainted with each other, that there had been no "bad blood" existing between them, that appellant had told Perez that the shooting had been accidental and that Claudio Ayala had been present at the time of the shooting. All of these facts elicited from Perez at the preliminary hearing were consistent with appellant's defense at trial. Moreover, during the cross-examination of Perez at the preliminary hearing, appellant was not precluded from pursuing any line of inquiry. Under all of these circumstances, we conclude that appellant was not denied a full and fair opportunity to cross-examine Perez at the preliminary hearing; and, therefore, we hold that, upon finding Perez to be unavailable to testify at appellant's trial, the trial court did not err by allowing Perez's preliminary hearing testimony to be introduced into evidence at trial.

Appellant's remaining contention is that his sentence was excessive and unreasonable in that the trial court overemphasized the seriousness of his offense without considering several mitigating factors. As such, he argues, the trial court abused

its discretion by sentencing him within the standard range of the Sentencing Guidelines, rather than the mitigated range of the guidelines. Because appellant is challenging the discretionary aspects of sentencing, we must determine whether he has raised a substantial question as to whether his sentence was appropriate under the Sentencing Code as a whole. See: 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987).

"Although the existence of a substantial question must be determined on a case by case basis, the Superior Court will generally review the discretionary aspects of sentencing where a colorable argument is made that the actions of the sentencing court were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Groft,* 424 Pa.Super. 510, 520, 623 A.2d 341, 347 (1993). However, the Superior Court has "held that a claim of excessiveness of sentence does not raise a substantial question so as to permit appellate review where the sentence is within the statutory limits." *Commonwealth v. Jones,* 418 Pa.Super. 93, 106, 613 A.2d 587, 593 (1992) (en banc). See also: *Commonwealth v. Canfield,* 432 Pa.Super. 496, 500, 639 A.2d 46, 48 (1994); *Commonwealth v. Breter,* 425 Pa.Super. 248, 251, 624 A.2d 661, 662 (1993). Similarly, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 236, 653 A.2d 706, 710 (1995). See also: *Commonwealth v. McKiel,* 427 Pa.Super. 561, 564, 629 A.2d 1012, 1013 (1993); *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385 (1989) (en banc).

Here, appellant has done no more than ask this Court to substitute our judgment for that of the sentencing court. However, "[t]his type of claim 'does not present a substantial question that the sentence imposed was inappropriate under the Sentencing Code as a whole.'" *Commonwealth v. Groft,* *supra,* quoting *Commonwealth v. Rogers,* 386 Pa.Super. 476,

481, 563 A.2d 165, 168 (1989) and *Commonwealth v. Billett,* 370 Pa.Super. 125, 131, 535 A.2d 1182, 1185 (1988). Accordingly, further review of the discretionary aspects of sentencing is not warranted.

Moreover and in any event, there was no abuse of discretion in imposing appellant's sentence. The trial court had the benefit of a pre-sentence report; and, therefore, it may be presumed that the court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers,* 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988). "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." *Id.* at 102, 546 A.2d at 18. A sentence of not less than eight years nor more than sixteen years for third degree murder, which was within the standard range of the Sentencing Guidelines, can be considered to be neither excessive nor unreasonable.

The judgment of sentence is affirmed.