J-S06020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEVIN WALKER | |
| Appellant | No. 150 EDA 2014 |

Appeal from the Judgment of Sentence December 19, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010823-2010

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 09, 2015**

Devin Walker appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction, by a jury, for one count each of aggravated assault,[1] carrying a firearm without a license,[2] carrying a firearm in public in Philadelphia,[3] criminal conspiracy,[4] and two counts of robbery.[5]  After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702.

[2] 18 Pa.C.S. § 6106.

[3] 18 Pa.C.S. § 6108.

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 3701.

Walker and his co-conspirator, Terrence Evans,[6] were implicated in an armed robbery that occurred on May 19, 2010, at Elzina's Lounge on West Master Street in the City of Philadelphia. At approximately 12:05 p.m., two individuals brandishing guns and wearing hooded sweatshirts entered the bar. One perpetrator demanded money from the patrons while the other held a gun to the bar owner's neck. Bar surveillance video shows that one of the perpetrators was wearing black Nike sneakers with a white Nike "swoosh" logo. At the time of the robbery there were three patrons in the bar as well as the bar owner; one of the patrons, an armed retired police officer, exchanged gun fire with a perpetrator and was shot in the finger.

Immediately following the shooting, one of the perpetrators ran out of the bar; the other perpetrator put his hands up and said he had had enough, put down his gun and the money, and ran out the back door of the bar. Fifteen minutes following the robbery, Police Officer Daniel Mason was responding to a robbery in progress call when he observed Walker standing in the street less than one block from the bar. When the officer exited his police vehicle, Walker fled into his house; the officer pursued Walker into the house, secured him, and brought him back to the establishment. None of the bar patrons was able to identify Walker because of the hood that had

_____

[6] Co-conspirator Evans entered a guilty plea to robbery and conspiracy and was sentenced to 22-44 months in prison, followed by five years of probation.

obscured his face during the robbery. A later search of Walker's second floor bedroom uncovered a pair of black Nike sneakers with a white "swoosh" logo; however, no weapons or ammunition were found in Walker's residence.

At the preliminary hearing, the owner of the bar, Tracy Ricketts, testified that a short man with light complexion held a gun to her neck during the armed robbery. This was the same perpetrator who shot the police officer patron in the finger. Evans, Walker's co-conspirator, admitted his own guilt at trial but recanted his prior statement to police and sworn guilty plea testimony identifying Walker as the other perpetrator. However, a text message sent from Evans' cell phone on the day of the robbery stating, "I got shot at and Dev shot him and now the block is crazy hot now," corroborated his original statement. Evans also identified Walker from a police photo array. In addition, Ronald Kelly was standing outside the bar at the time of the robbery when he observed Walker exit out the back door and run towards 57th and Thompson Streets. The following day Kelly gave a formal statement to police identifying Walker as the individual who ran from the bar.

After a four day trial, Walker was convicted of the above-named offenses. He was sentenced to concurrent terms of 5-10 years' imprisonment on the aggravated assault charge, 5-10 years in prison on each of the robbery charges, 2-4 years' imprisonment on the carrying firearm without a license charge, 1-2 years in prison on the carrying firearm in public charge, and a consecutive term of 1-2 years' imprisonment on the

conspiracy charge. No post-sentence motions were filed. This timely direct appeal followed.

On appeal, Walker presents the following issues for our consideration:

(1) Was the evidence insufficient to convict the defendant of aggravated assault, robbery, violation of the uniform firearms act, and conspiracy?

(2) Is the defendant entitled to a new sentence hearing?

(3) Did the trial court err in allowing the Commonwealth to introduce the preliminary hearing testimony of the witness, Ronald Kelly, at trial?

Walker first challenges the sufficiency of his convictions. Specifically, he claims that there was insufficient identification testimony to prove, beyond a reasonable doubt, that he was a perpetrator of the crimes where there was no eyewitness identification testimony and where the co-defendant recanted his prior statement that Walker was the other individual involved in the armed robbery.

The standard of review regarding challenges to the sufficiency of the evidence is well-settled. In reviewing the sufficiency of the evidence, the appellate court must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Jones*, 954 A.2d 1194 (Pa. Super. 2008); *see Commonwealth v. Wiley*, 432 A.2d 220, 221 (Pa. Super. 1981) ("In considering the sufficiency of the evidence of appellant's identification, [the appellate courts] regard the

evidence and all inferences arising from it in the light most favorable to the Commonwealth.").

Instantly, the bar owner testified that a shorter man with light complexion, wearing a hood, held a gun to her neck. N.T. Preliminary Hearing, 8/25/10, at 14-16. She was able to see him jump over the counter and approach her from a distance of three feet. *Id.* at 14. The police officer-patron, who was shot in the finger, testified that although he saw the face of the "shorter man with the gun" during the robbery, he did not recognize him in court during the preliminary hearing. *Id.* at 20-22. He described the shooter as having reddish-brown hair, weighing approximately 125 pounds, and 5'6" in stature. *Id.* at 29.

Ronald Kelly, a bystander who was outside of the bar when the robbery occurred, gave a statement to police days after the robbery indicating that he saw "Dev"[7] run out of the back door of the bar, after shots were fired, wearing a gray hoodie and blue jeans. *Id.* at 39-40. Kelly also positively identified Walker from a police photograph. *Id.* at 40-41. Kelly testified that he had known Dev from the neighborhood for almost one year. *Id.* at 39.

At the preliminary hearing Kelly recanted his identification of Walker, testifying that the only reason he told the police that Walker was involved in

---

[7] "Dev" is short for the defendant/appellant, Devin Walker.

the robbery was because he saw Walker in the police cruiser, that Kelly was scared because he had just been released from jail himself and he was afraid he would be charged as a conspirator in the robbery. *Id.* at 43. At the time he made the statement to the police, Kelly was in a holding cell for his potential involvement in the matter; he had been there for one and one-half days. *Id.* 46-47. Kelly was unable to be located for trial. However, the Commonwealth introduced his statement and preliminary hearing testimony at trial.

Detective Timothy McCool, the officer who investigated the robbery, also testified at the preliminary hearing. He confirmed that he took Kelly's statement after the robbery and that Kelly positively identified a picture of Walker that he showed him during the investigation. *Id.* at 49-51. Finally, at trial Evans, Walker's co-conspirator, recanted his prior incriminating statement made to the police that implicated Walker in the armed robbery. N.T. Trial, 10/30/13, at 79-80.

In *Commonwealth v. Coleman*, 264 A.2d 649 (Pa. 1970), our Supreme Court stated that recantation is the least reliable form of proof. Moreover, affidavits made by Commonwealth witnesses recanting their testimony given at trial are exceedingly unreliable. *Commonwealth ex rel. Leeper v. Russell*, 184 A.2d 149 (Pa. Super. 1962).

Despite the fact that the co-conspirator and Kelly subsequently recanted, based upon the witnesses' initial identification testimony, coupled with the circumstantial evidence offered at trial (inculpatory text message

- 6 -

sent by Walker's co-conspirator, proximity of Walker to crime scene immediately following robbery, Walker's flight from police, and Nike shoe match), we believe that there was sufficient evidence for the factfinder to believe, beyond a reasonable doubt, that Walker was the other perpetrator involved in the armed robbery. *See Commonwealth v. Stays*, 70 A.3d 1256 (Pa. Super. 2013) (doubt about defendant's guilt to be resolved by fact finder unless evidence so weak and inconclusive that, as matter of law, no probability of fact can be drawn from combined circumstances; Commonwealth's burden of proof may be sustained by wholly circumstantial evidence where evidence, coupled with reasonable inferences drawn therefrom, overcomes presumption of innocence). Considering the evidence and all inferences arising from it in the light most favorable to the Commonwealth, there was sufficient evidence to prove that Walker was the other perpetrator. *Wiley*, *supra*.

With regard to his second claim, an attack on the discretionary aspect of his sentence, we note that Walker neither raised the issue at sentencing or post-trial. Therefore, it is waived on appeal. *See Commonwealth v. Felder*, 75 A.3d 513 (Pa. Super. 2013).

Finally, in his third issue on appeal, Walker asserts that the trial court improperly permitted the Commonwealth to introduce Kelly's statement and preliminary hearing testimony at trial. Walker claims that the statement is hearsay, that the Commonwealth failed to exercise due diligence in locating Walker prior to trial, and that the defense was not given a full and fair

opportunity to cross-examine Kelly at the preliminary hearing regarding his criminal record.

Pennsylvania common law permits, as an exception to the hearsay rule, the admission of prior recorded testimony from a preliminary hearing provided that: (1) the witness responsible for that testimony is presently unavailable; (2) the defendant had counsel;[8] and (3) the defendant had a full and fair opportunity to cross-examine the declarant during the earlier proceeding. *See Commonwealth v. McGrogan*, 568 A.2d 924 (Pa. 1990); *see also* Pa.R.E. 804(b)(1) (hearsay exceptions; former testimony); *Commonwealth v. Nelson*, 652 A.2d 396 (Pa. Super. 1995).

With regard to the first prong of Rule 804, the true test for unavailability of a witness is whether the prosecution has made a good faith effort to produce the live testimony of the witness and, through no fault of its own, is prevented from doing so. *Commonwealth v. Melson*, 637 A.2d 633, 638 (Pa. Super. 1994). How far the prosecution must go to produce the recalcitrant witness' testimony is a question of reasonableness. *Id.* It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness and court's decision will not be overturned absent an abuse of discretion. *Commonwealth v. Douglas*, 737 A.2d 1188, 1196 (Pa. 1999).

---

[8] This prong is not challenged. Walker was represented by counsel.

Here, the Commonwealth attempted to locate Kelly on August 12, 2012, more than one year before trial commenced. Police Officer Joseph Porretta first attempted to serve a witness subpoena[9] on Kelly at his last known address of record on North 57th Street in Philadelphia. N.T. Trial, 10/31/13 at 67. After remaining outside the residence for almost 90 minutes with no one answering the door, the officer went to a neighboring house to ask if anyone had seen Kelly and went to a corner store owner to inquire whether the owner had seen Kelly recently. *Id.* at 68. Over the next fourteen months, officers attempted to locate Kelly in that vicinity between 10-12 more times. *Id.* at 69. Not until one week before trial did Officer Porretta speak to a woman who identified herself as Kelly's grandmother and told him Kelly had moved to Atlanta two months prior, but she had no contact information for him. *Id.* at 71.

Based upon the record evidence, we conclude that the court did not abuse its discretion in determining that the Commonwealth made a good faith effort to secure Kelly. At least 14 attempts were made to locate him at and near his last known address, for more than 14 months, to no avail. *See Commonwealth v. Blair*, 331 A.2d 213, 215 (Pa. 1975) (Act does not require that Commonwealth establish witness has disappeared from face of

_____

[9] According to the trial court opinion, at the time of trial Kelly was also subject to an active bench warrant for his involvement in a possession of marijuana case.

earth; it demands that Commonwealth make good faith effort to locate the witness and fail).

With regard to prong two of Rule 804, Walker claims that the defense was not given the opportunity to fully and fairly cross-examine Kelly at the preliminary hearing regarding his criminal history. Specifically, Walker asserts that defense counsel was not informed of the fact that at the time Kelly was questioned by the police he was on parole and/or probation and what effect this would have had on his statement implicating Walker in the robbery. Walker claims that this fact was "vital impeachment evidence" that should have been available to the defense in order to test the witness's veracity and bias, citing *Commonwealth v. Bazemore*, 614 A.2d 684 (Pa. 1992), to support his argument.

In *Bazemore*, the defendant was charged with criminal attempt to commit burglary. Defense counsel was unaware or had not been informed at the preliminary hearing that: (1) the sole Commonwealth witness had made a prior inconsistent statement to the police; (2) the witness had a criminal record; and (3) the D.A. was contemplating filing criminal charges against the witness for homicide and conspiracy in connection with the same criminal incident. When the witness invoked his 5th Amendment right against self-incrimination and decided not to testify at trial, the Commonwealth sought to admit his preliminary hearing testimony at trial. The defendant argued that the witness's statement was inadmissible because he was denied a full and fair opportunity to cross-examine the

witness during the preliminary hearing "due to the Commonwealth's failure to provide the defense with complete and vital information concerning [the witness]." *Id.* at 685.

Our Supreme Court determined that the defendant in *Bazemore* was not given a "fair" opportunity to cross-examine the witness at the preliminary hearing due to the Commonwealth's failure to disclose relevant impeachment evidence prior to the witness's initial testimony. *Id.* at 686. Since the defense was unaware of this relevant evidence at the preliminary hearing, the Court held that no "indicia of reliability" could be attributed to the defense's cross-examination, especially where the Commonwealth sought to admit that prior testimony as substantive evidence against the defendant at trial and where the Commonwealth asserted that not admitting that prior testimony would effectively bar prosecution of the defendant. *Id.* at 687.

The constitutional concerns and implications regarding the use of an unavailable witness's preliminary hearing testimony illustrated in *Bazemore* are simply not present in the instant case. Here, the Commonwealth avers in its brief that Kelly was not even on probation or parole at any relevant time in the instant case. Commonwealth's Brief, at 20. Moreover, the fact that counsel for Walker did not have Kelly's criminal extract at the preliminary hearing was not prejudicial where Kelly's recantation testimony was favorable to the defense and, as such, it would not have been

strategically sound to try to impeach Kelly on his credibility or bias through cross-examination.

While defense counsel objected to the admission of Kelly's statement as hearsay, N.T. Preliminary Hearing, 8/25/10, at 37-38, counsel did extensively cross-examine him on why he initially implicated Walker, noted that Kelly had just been released from jail, and asked Kelly if he identified Walker because "he was scared because as a matter of face [sic] you were a suspect in this robbery?" *Id.* at 43-45. Defense counsel continued to pursue a line of questioning regarding Kelly being placed in a holding cell for three days during the investigation of the instant robbery and whether fear of being charged in the case was the reason why he identified Walker. *Id.* at 44-45. *See Nelson*, *supra* (where defendant's counsel fully challenged witness's credibility and potential bias based on available evidence, and where additional evidence would not have substantially affected exploration of witness's credibility or bias during cross-examination, 6th Amendment and due process rights not violated by admission of former testimony).

Under these facts, we believe that Walker was given a full and fair opportunity to cross-examine Kelly at the preliminary hearing and that Kelly's statement and preliminary hearing testimony were properly admitted at trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2015