J-S43010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MAURICE JACKSON | |
| Appellant | No. 230 EDA 2013 |

Appeal from the Judgment of Sentence December 3, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005433-2010

BEFORE:  GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:             **FILED AUGUST 04, 2014**

Appellant, Maurice Jackson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for criminal conspiracy, robbery, robbery of motor vehicle, theft by unlawful taking or disposition, and receiving stolen property.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises four issues for our review:

_____

[1] 18 Pa.C.S.A §§ 903, 3701, 3702, 3921, 3925, respectively.

_____

*Former Justice specially assigned to the Superior Court.

DID NOT THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY, WHERE THE CIRCUMSTANCES OF THE OUT-OF-COURT IDENTIFICATION BY COMPLAINANT…WERE UNDULY SUGGESTIVE, AND WHERE THE IN-COURT IDENTIFICATION DID NOT HAVE AN INDEPENDENT ORIGIN SUFFICIENT TO PURGE THE PRIMARY TAINT OF THE OUT-OF-COURT IDENTIFICATION?

DID NOT THE TRIAL COURT ERR IN REFUSING DEFENSE COUNSEL'S REQUESTED **KLOIBER**[2] INSTRUCTION TO THE JURY REGARDING IDENTIFICATION TESTIMONY?

DID NOT THE TRIAL COURT ERR IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL, WHERE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND A NEW TRIAL WAS NECESSARY IN THE INTERESTS OF JUSTICE

DID NOT THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN SENTENCING APPELLANT TO AN AGGREGATE TERM OF INCARCERATION OF 114 TO 240 MONTHS, WHERE THE IMPOSITION OF CONSECUTIVE TERMS OF INCARCERATION RESULTED IN A SENTENCE THAT WAS MANIFESTLY EXCESSIVE?

(Appellant's Brief at 4).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly

_____

[2] **Commonwealth v. Kloiber**, 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954).

- 2 -

preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original)).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Anderson**, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions

- 3 -

were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912-13 (quoting ***Commonwealth v. Brown***, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)).

"Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011) (quoting ***Commonwealth v. Pass***, 914 A.2d 442, 446-47 (Pa.Super. 2006)). ***But see Commonwealth v. Dodge***, 957 A.2d 1198 (Pa.Super. 2008), *appeal denied*, 602 Pa. 662, 980 A.2d 605 (2009) (holding consecutive, standard range sentences on thirty-seven counts of **petty theft offenses** for aggregate sentence of 58½ to 124 years' imprisonment constituted virtual life sentence and was so manifestly excessive as to raise substantial question). "Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Prisk, supra*** at 533 (quoting ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa.Super. 2010), *appeal denied*, 609 Pa. 685, 14 A.3d 825

(2011)). Additionally, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (quoting ***Commonwealth v. Urrutia***, 653 A.2d 706, 710 (Pa.Super. 1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael E. Erdos, we conclude Appellant's issues merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion, filed November 26, 2013, at 3-6) (finding: **1)** Victim struggled with assailant in broad daylight long enough to provide police with description; Victim described assailant as African-American male wearing dark hooded sweatshirt and sunglasses; police recovered dark hooded sweatshirt and sunglasses near location where Appellant was found hiding; Victim made on-site identification of Appellant, without hesitation, within one hour of attack; police officers did not suggest to Victim that Appellant was assailant; **2)** Victim clearly observed Appellant during struggle; Victim did not hesitate in identifying Appellant as assailant at crash site or during trial; Victim's testimony regarding color of Appellant's sweatshirt went to weight of evidence and did not warrant ***Kloiber*** charge;

**3)** jury's guilty verdicts were consistent with evidence and far from shocking; following car chase and foot pursuit, Victim positively identified Appellant as assailant; Victim's identification reliably established Appellant's culpability for crimes at issue; **4)** imposition of consecutive, standard range sentences was appropriate; Appellant robbed and pistol-whipped delivery person and led police on high-speed chase that endangered innocent bystanders; further, Appellant's previous record of convictions, violations, and revocations suggested that potential for rehabilitation was low). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY **FILED**
FIRST JUDICIAL DISTRICT
CRIMINAL TRIAL DIVISION

NOV 2 6 2013

Criminal Appeals ...
First Judicial District of P.

COMMONWEALTH OF PENNSYLVANIA    :     CP-51-CR-0005433-2010

                  :
                  :
                  :

             v.            :

                  :      **230 EDA 2013**

MAURICE JACKSON          :



CP-51-CR-0005433-2010 Comm. v. Jackson, Maurice
Opinion

7089688471

**OPINION**

ERDOS, J.

On October 16, 2012, a jury convicted Appellant of conspiracy to commit aggravated

assault, robbery, robbery of a motor vehicle, theft and receiving stolen property. On December

3, 2012, Appellant was sentenced to a total term of 114 to 240 months of incarceration plus ten

years probation. This appeal followed.

FACTS:

At approximately 10:00 a.m. on March 9, 2010, two males approached Maria Martinez while she was delivering prescription drugs to the Oxford Circle Pharmacy and, at point of gun, demanded that she give them the keys to her van, a beige Nissan Quest. Notes of Testimony ("NT"), 10/10/2012, at 39-40. Martinez refused and they struggled until one of the men hit her on the side of her face with a firearm. *Id.* at 44. She dropped the keys and her assailants took off in her van. *Id.*

Within ten or fifteen minutes, several officers responded to the pharmacy. *Id.* at 47. Martinez was able to converse in Spanish with Police Officer Vasquez and she told him that the attackers were African-American and wore black hooded jackets and black sunglasses. *Id.* at 48-49. Martinez further described one of the males, whom she later identified as Appellant, as 25 to 30 years old, 180 pounds and six feet tall with short hair. *Id.*, 10/11/2012, at 49.

Police Officer Hancock also responded to the pharmacy and observed that Martinez' face was bleeding. *Id.* at 10. He obtained information from Calvin Rodriguez, a pharmacy security guard, that the Nissan Quest had travelled northbound on Horrocks Street towards Roosevelt Boulevard. *Id.* at 13.

1

Police Officer Gordon received information about the car theft as he was patrolling the area that morning. *Id.* at 102-103. Gordon observed the Nissan Quest travel south-bound on Castor Avenue, jump a median and then proceed westbound on Deveraux Street. *Id.* at 103. The van made a left onto Summerdale Avenue, jumped the curb to bypass parked school buses and made another left onto Benner Street. *Id.* at 106. Gordon was then instructed to stop the pursuit of the van, and shortly after that he heard a crash at the intersection of Robbins and Large Streets. *Id.* at 112. Upon arriving at that intersection, Gordon observed the damaged Nissan Quest and a green Ford Explorer off to the side of the road. *Id.*

Sergeant Kleinkurt and Lieutenant Hearn were on highway patrol as information about the car chase went out over police radio. *Id.* at 149. They saw the Nissan Quest turn northbound onto Large Street and then lost sight of the vehicle until they heard a crash. *Id.* at 150-151. They approached Robbins and Large Streets and witnessed the driver of the Nissan Quest, wearing a dark hooded sweatshirt, running in the direction of 6200 Large Street. *Id.* at 152. Two people at the corner told the officers "he went to this driveway," indicating an alley behind Large Street. *Id.* at 114-115.

After proceeding down the alleyway, the officers observed a couple standing in the window of a home pointing to a red Dodge parked behind their home. *Id.* The officers found Appellant underneath the Dodge, lying face down and wearing a t-shirt and blue jeans. *Id.* at 156-157. The officers repeatedly ordered Appellant to show his hands before he ultimately complied. *Id.* at 193-194. The officers slid him from underneath the car and placed him in handcuffs. *Id.*

Vasquez was dispatched to the intersection of the crash and brought Martinez to identify the suspect. *Id.* at 61. Seated in the police car with Vasquez, Martinez identified Appellant as the man who robbed her. *Id.*, 10/10/2012, at 53. Detective Steven Dewey also arrived at the crash site to investigate the robbery. *Id.*, 10/12/2012, at 47-48. He found a pair of sunglasses in a sewage drain in front of the Dodge, and a blue hooded sweatshirt and rubber gloves under the vehicle. *Id.* at 50-57. Dewey also obtained a search warrant for Appellant's DNA. *Id.* at 61. A stipulation at trial established that DNA from the sweatshirt and the latex gloves matched Appellant's and that the odds of this pattern of DNA existing in the general population ranged from 1 in 321,400 to 1 in 459.1 quadrillion. *Id.*, 10/15/2012, at 74-76.

After the jury found Appellant guilty, he was sentenced to 57 to 120 months followed by five years probation on the aggravated assault charge. *Id.*, 12/3/2012, at 39. He received the same, consecutive sentence for robbery of a motor vehicle for a total of 114 to 240 months of incarceration plus ten years probation. *Id.*

Appellant's prior criminal history included seventeen arrests, three of which involved guns. *Id.*, 12/3/2012, at 26-28. He also had eight previous convictions, as well as numerous violations and revocations of probation and parole. Presentence Report, 11/21/2012, at 4. The guideline range for both aggravated assault and robbery of a motor vehicle, with an enhancement for the use of a deadly weapon, was 57-69 plus or minus 12 months. *Id.*, 12/3/2012, at 16-17.

2

DISCUSSION:

Appellant raises the following verbatim issues:

a. The trial court erred in denying appellant's motion to suppress identification testimony, where the circumstances of the out-of-court identification by complainant Maria Ramirez were unduly suggestive, and where the in-court identification did not have an independent origin sufficient to purge the primary taint of the out-of-court identification.

b. The trail court erred in refusing defense counsel's requested *Kloiber* charge to the jury regarding identification testimony.

c. The trial court erred in denying appellant's pre-sentence motion for a new trial, where the jury's verdict was against the weight of the evidence, and where evidence that was known to the Commonwealth but not provided to counsel, in violation of its obligations under *Brady v. Maryland,* and which was discovered by counsel after the verdict and proffered to the court, necessitated a new trial in the interests of justice.

d. The trial court erred and abused its discretion in sentencing appellant to an aggregate term of incarceration 114 to 240 months of incarceration, where the imposition of consecutive terms of incarceration resulted in a sentence that was manifestly excessive.

Appellant claims that the out-of-court identification of Appellant by Martinez was unduly suggestive. The Supreme Court has held that "one on one" identifications occurring soon after the commission of the crime are permissible. *Commonwealth v. Bullock,* 393 A.2d 921, 923 (Pa. 1978). To determine if the identification evidence is proper, it must be reliable under the totality of the circumstances. *McElrath v. Commonwealth,* 592 A.2d 740, 742 (Pa. 1991). The factors considered in determining whether to admit identification evidence includes the witness' opportunity to view the perpetrator and degree of attention at the time of the incident, the accuracy of the prior description of the perpetrator, the certainty of identification, and the time between the incident and the identification. *Commonwealth v. Sample,* 468 A.2d 799, 801 (Pa. 1983).

Martinez struggled with the assailants in broad daylight and long enough to be able to give a description to police that he was an African-American male wearing a dark hooded

3

sweatshirt and sunglasses. NT, 10/10/2012, at 48-49, 53. Those same items were recovered at the site where Appellant was found hiding under a vehicle following a car chase and foot pursuit. *Id.*, 10/12/2012, at 50-57. Martinez' on-site identification occurred within an hour of the attack and was made without hesitation. *Id.*, 10/10/2012, at 53. Further, she testified that the police officers did not suggest to her that Appellant was her assailant; nor was the fact that Appellant was handcuffed improper. *Id; see Commonwealth v. Allen,* 429 A.2d 1113, 1121 (Pa. Super. 1981) (no special element of unfairness where police asked victims if the defendants, who were handcuffed, were the perpetrators).

Appellant's next claim is that the court erred in refusing to give a *Kloiber* charge to the jury. A *Kloiber* charge is used to instruct the jury that a particular eyewitness' identification should be viewed with caution where that witness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification of the defendant in the past. *Commonwealth v. Upshur,* 764 A.2d 69, 77 (Pa. Super. 2000). Such an instruction is not required where the identification testimony is "positive, unshaken, and not weakened by a prior failure to identify." *Id.*

Using this test, a *Kloiber* charge was not appropriate here. Martinez was able to observe Appellant clearly as she struggled with him and the second male for control of the keys to her van. NT, 10/10/2012, at 40. She did not hesitate in identifying Appellant as the attacker at the site of the crash. *Id.* at 53. Nor did she struggle or equivocate when identifying Appellant at trial. Moreover, to the extent that Appellant is suggesting that a *Kloiber* charge was warranted because Martinez testified that the sweatshirt recovered looked different than the one the perpetrator was wearing during the attack, such testimony went to the weight of the evidence; it did not justify an instruction cautioning the jury that her identification might have been mistaken.

4

Appellant also claims that the verdict was against the weight of the evidence. The weight of the evidence is exclusively for the finder of fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995), cert. denied 519 U.S. 827 (1996). An appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie*, 445 A.2d 1203, 1206 (Pa. 1982). Thus, the lower court's verdict may only be reversed if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Hawkins*, 701 A.2d 492, 500 (Pa. 1997), cert. denied, 523 U.S. 1083 (1998).

The jury's guilty verdicts in this case were consistent with the evidence and far from shocking. The car chase and foot pursuit of Appellant that led police to find him hiding under a vehicle, in addition to the positive identification by Martinez, reliably established that Appellant was responsible for the crimes against Martinez.

Appellant's further claim that the Commonwealth violated *Brady v. Maryland* likewise has no merit. A *Brady* violation occurs when the Commonwealth conceals exculpatory evidence that results in prejudice to the defendant. *Commonwealth v. Paddy*, 800 A.2d 294, 305 (Pa. 2002). Here, Appellant claims information discovered in the Daily News concerning the arrest of two other individuals for a string of pharmacy robberies in Northeast Philadelphia would have exculpated Appellant. However, it appears that these robberies occurred well over two years after the assault and robbery of Martinez. As such, this information falls well short of that which might trigger a *Brady* violation.

Appellant's final claim is that the trial court imposed an excessive sentence. Sentencing is a matter within the sound discretion of the trial judge and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275

5

(Pa. 2006). Moreover, it is well-settled that "the sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for deviation on the record." *Commonwealth v. P.L.S.*, 894 A.2d 120 (Pa. Super. 2006) (citation omitted). Aside from the guidelines, the court must also consider the general principles of sentencing such as the protection of the public, the gravity of the offense in relation to its impact on the victim and community, and the rehabilitative needs of the defendant. *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa. Super. 2011).

The Court did not abuse its discretion in regards to sentencing, as the sentence imposed was neither excessive nor unduly harsh. In fact, the sentences for aggravated assault and robbery of a motor vehicle were each within the standard guideline range. That they were to run consecutively was appropriate given the circumstances of the case and Appellant's background. These crimes were violent and terrifying, encompassing not only the robbery of a delivery woman, but her being pistol-whipped as well. To make matters even worse, and more dangerous, Appellant also led police on a high-speed chase endangering countless innocent lives. Further, Appellant's previous record of convictions, violations and revocations suggests that his potential for rehabilitation is low and that he is at a high risk to victimize the community in the future. Having considered the nature of the offenses, the protection of the public, and the character and rehabilitative potential of the defendant, the Court delivered a sentence that was just.

CONCLUSION:

Appellant's conviction was supported by the evidence, and the Court did not err in admitting identification evidence, declining to give a *Kloiber* charge, and imposing his well-deserved sentence. Accordingly, the judgment of sentence should be AFFIRMED.

BY THE COURT:

_____
MICHAEL E. ERDOS, J.

November 26, 2013

7

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Opinion upon the persons, and in the manner indicated below:

James Temple, Esquire
1441 Sansom Street
Philadelphia, PA 19102
(first class mail)

Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
(first class mail)

Jennifer Pierce

Date: November 26, 2013