J-S43045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY RAPACH | : | No. 1725 MDA 2018 |

Appeal from the Order Entered October 16, 2018
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0002595-2017

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 12, 2019**

The Commonwealth appeals the order of the Court of Common Pleas of Luzerne County granting Appellee Jeffrey Rapach's pre-trial motion to prohibit the Commonwealth from admitting into evidence the preliminary hearing testimony of Gary Smith, a witness who is now unavailable to testify.  After careful review, we reverse and remand for further proceedings.

In the early morning hours of August 10, 2016, police were dispatched to a reported arson of a residence at 984 North Locust Street in Hazleton. Officers determined that someone had attempted to set fire to the home by throwing an incendiary device on the front porch.  Fortunately, the fire caused minor damage to the porch and did not injure any individuals inside the home.

Immediately after the incident, officers were able to apprehend Gary Smith.  While in police custody, Smith asked to make a statement to Hazleton City Police Detective David Rodick.  At the beginning of this conversation,

_____
* Former Justice specially assigned to the Superior Court.

which was audio-recorded and transcribed as a 78-page document, Smith waived his **Miranda** rights. Smith confessed that he set fire to a plastic container and threw it on the porch of Appellee's former wife ("the victim"). From the beginning of the interview, Smith emphasized he was "not going to incriminate nobody else." Statement, 8/10/16, at 4.

While Smith took responsibility for the crime, he conceded he had an accomplice, whom he refused to name. Smith indicated that he felt he had to "take the blame" as he "owed" the individual. *Id*. at 10, 39. When Detective Rodick asked Smith for the truth, Smith reiterated that he could not incriminate anyone and stated "[i]f you were my friend, you'd want me to keep my mouth shut too." *Id*. at 35.

As the interview progressed, Smith suggested that Appellee was involved in the arson. Smith admitted that he met Appellee at the local Owls' Club that evening and that Appellee ran one way and he ran the other. *Id*. at 16-17. In addition, Smith hinted at the individual's identity by revealing this person cared for Smith's elderly parents while Smith was previously incarcerated. *Id*. at 10, 39. When Detective Rodick made it clear Appellee was the primary suspect, Smith ignored specific questions about Appellee and claimed that he was the sole actor in the arson. *Id*. at 42. Later in the conversation, when Detective Rodick clarified that Appellee could be held responsible as a co-conspirator, Smith asked that the recording be stopped and did not want to answer further questions. *Id*. at 70.

Nine months later, on May 12, 2017, Smith gave a second statement that was recorded and transcribed in the presence of Detective Rodick, a Luzerne County Assistant District Attorney (ADA), as well as Smith's defense counsel. On this date, Smith indicated Appellee was the other individual involved in the crime and indicated that Appellee directed him to commit the arson on his former wife's home. When Detective Rodick asked Smith why he has been "so vehement about taking the blame" for the arson during the first interview, Smith indicated Appellee "actually didn't do nothing." Statement, 5/12/17, at 11. After Detective Rodick reminded Smith about the concept of a conspiracy, Smith responded "I may have torched this stuff, but I'm a grownup, I shouldn't have been so intoxicated that I was easily led, and I was." *Id.*

On June 5, 2017, Appellee was charged with arson and related offenses. In the affidavit of probable cause, Detective Rodick indicated that Smith made statements to the police on August 10, 2016 and May 12, 2017, respectively, but specified that Smith confessed in the latter statement that Appellee had directed him to commit the arson. Affidavit of Probable Cause, at 1.

On July 26, 2017, the trial court held a preliminary hearing at which Appellee was represented by counsel. When the hearing began, the prosecutor indicated he had provided Appellee with Smith's criminal record and advised him of the plea agreement Smith had made with the prosecution. However, the prosecutor did not provide Appellee with a transcript of Smith's August 10, 2016 or May 12, 2017 statements prior to the hearing.

- 3 -

During the hearing, Smith indicated that on the night of instant crimes, Smith and Appellee were drinking alcohol together and Appellee was complaining about the victim, who was Appellee's former spouse. Smith indicated that Appellee made a "Molotov cocktail" by placing gas and a wick inside a plastic bottle. Notes of Testimony (N.T.), 7/26/17, at 13-14. Smith asserted that Appellee directed him to throw the device at the victim's house and then to meet Appellee at the nearby Owl's Club. Smith then went alone to the victim's home, lit the wick, and threw the incendiary device on the victim's front porch steps. Although Smith tried to run from the scene, a witness in a minivan followed him and led police to his location.

Thereafter, the prosecutor asked Smith at the preliminary hearing if he was questioned after his arrest by the police, Smith responded: "Yeah, I didn't say anything though … [as] I was trying to be loyal." *Id*. at 16. The prosecutor then directly questioned Smith about the differences between his August 10, 2016 or May 12, 2017 statements, asking "so why then, after telling the investigators one story [upon your arrest], did you tell the investigators the full story?" *Id*. at 17-18. Smith suggested that he was angered by Appellee's lack of acknowledgement that he was "being quiet," when he learned that Appellee told Smith's mother that he was hoping Smith would "get the help he needs" as a result of the arrest. *Id*. at 18.

On cross-examination, Appellee's counsel criticized Smith, as she alleged that Smith "didn't say anything for eight months" after his arrest; Smith agreed with this allegation. *Id*. at 28. Defense counsel did not ask

Smith any additional questions about his August 10, 2016 statement. Detective Rodick subsequently testified that he had conducted an audio-recorded interview with Smith upon his arrest. Specifically, Detective Rodick recalled that Smith had "open[ed] the door" to implicate Appellee in the arson on multiple occasions, but subsequently "closed the door" as he appeared to feel guilty about incriminating Appellee. *Id*. at 55.

At the conclusion of the hearing, the trial court found the prosecution had presented a *prima facie* case that permitted trial on the charges. Thereafter, trial was scheduled for September 17, 2018.

On September 13, 2018, Appellee filed a motion to preclude the use of Smith's testimony at trial as Smith had since passed away, and thus, was an unavailable witness. While Appellee acknowledged that the testimony of an unavailable witness may be admitted at trial if certain requirements are met, Appellee argued that he did not have a full and fair opportunity to question Smith at the preliminary hearing as the prosecution had not provided the defense with Smith's August 10, 2016 statement, which he claimed contained a prior inconsistent statement. As such, Smith contended that the admission of Smith's testimony would violate his constitutional right to confront witnesses against him.

After a hearing, the trial court granted Appellee's motion and prohibited the Commonwealth from admitting Smith's preliminary hearing testimony at trial. The trial court found defense counsel was "unaware of Smith's August 10, 2016 statement prior to her cross-examination of Smith" at Appellee's

preliminary hearing. Trial Court Opinion (T.C.O.), 12/12/18, at 3. While the trial court noted that the prosecution had not provided the recording or transcript of Smith's August 10, 2016 statement to the defense prior to the preliminary hearing, it found that this inaction was due to "mere inadvertence on the part of the assistant district attorney rather than any intentional nondisclosure of impeachment evidence." *Id*. at 3, n.1.

In addition, the trial court determined that Smith's August 10, 2016 statement was inconsistent with his preliminary hearing testimony as Smith's version of the facts vacillated from Appellee "having no involvement at all to [Appellee] plotting, planning and directing the entire incident." *Id.* at 4. As the trial court found that the defense did not have a full and fair opportunity to cross-examine Smith, it concluded that the prosecution could not admit the preliminary hearing testimony of Smith simply because he was now an unavailable witness. The Commonwealth appealed, certifying that the trial court's order terminates or substantially handicaps its prosecution. *See* Pa.R.A.P. 311(d).

It is well-established that "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Le*, ___Pa.___, 208 A.3d 960, 970 (Pa. 2019) (citing *Commonwealth v. Reid*, 627 Pa. 151, 99 A.3d 470, 493 (2014)).

The sole issue on appeal is whether the trial court properly granted the defense's request to exclude the preliminary hearing testimony of an unavailable witness. We are guided by the following principles:

> Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. *Commonwealth v. McGrogan,* 523 Pa. 614, 568 A.2d 924 (1990) (collecting cases). However, it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding. *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977).

***Commonwealth v. Bazemore***, 531 Pa. 582, 585, 614 A.2d 684, 685 (1992).

In evaluating whether a defendant had been provided full and fair opportunity to cross-examine an unavailable witness at a prior proceeding, this Court emphasized the following:

> The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. ***Commonwealth v. Cruz-Centeno***, 447 Pa.Super. 98, 668 A.2d 536, 542 (1995) (citation omitted). However, where the defense, at the time of the preliminary hearing, was ***denied access to vital impeachment evidence***, a full and fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing. ***Id***., 668 A.2d at 543 (citing ***Bazemore***, ***supra***). The opportunity to impeach a witness is particularly important where the Commonwealth's entire case hinges upon the testimony of the unavailable witness. ***Commonwealth v. Smith***, 436 Pa.Super. 277, 647 A.2d 907, 913 (1994) (citing ***Bazemore***, ***supra***).

*Commonwealth v. Johnson*, 758 A.2d 166, 169 (Pa.Super. 2000) (emphasis added).

The Commonwealth first argues that the trial court incorrectly found that the prosecution denied the defense access to Smith's prior statements when defense counsel was fully aware of these interviews. We agree. In *Bazemore*, the Supreme Court found that Bazemore was denied a full and fair opportunity to cross-examine a witness at his preliminary hearing as to preclude the use of the witness's testimony at trial, in part, due to the fact that defense counsel was "*not aware* that the witness had given a prior *inconsistent* statement to the police." *Bazemore*, 531 Pa. at 589, 614 A.2d at 687 (some emphasis added). The Supreme Court further provided that:

> we do not, today, impose upon the Commonwealth a duty to disclose that which it is not obligated by law to disclose. Furthermore, we are cognizant of the fact that the Commonwealth will not necessarily know that a particular witness may, indeed, subsequently become unavailable. Nevertheless, where as here, the Commonwealth knows, but *does not disclose to the defense at any time prior to preliminary hearing cross-examination of a witness*, that the witness has made an inconsistent prior statement and that witness then becomes unavailable to testify at trial, the Commonwealth must suffer the consequences in electing not to disclose that information which is necessary to afford defense counsel the opportunity for a full and fair cross-examination.

*Id*. at 590, 614 A.2d at 688 (emphasis added).

In this case, the record contradicts the trial court's finding that Appellee's counsel was unaware the Smith gave a recorded statement to police on the night of his arrest that differed from his preliminary hearing testimony.

In the affidavit of probable cause, Detective Rodick indicated that upon Smith's arrest on August 10, 2016, Smith asked to make a statement to the police about the incident, agreed to have the statement audio-recorded, and waived his **Miranda** rights. The affidavit of probable cause also sets forth in detail the substance of Smith's May 12, 2017 statement, in which he indicated that Appellee had directed him to commit the arson.

Moreover, at the preliminary hearing, on direct-examination, the prosecutor directly questioned Smith as to why he gave two different statements to police on August 10, 2016 and May 12, 2017, asking "so why then, after telling the investigators one story [upon your arrest], did you tell the investigators the full story?" N.T. at 17-18. Although Smith had initially refused to incriminate Appellee, Smith responded that he agreed to tell the full truth when he learned of a subsequent statement that Appellee had made, which Smith felt was disrespectful given his decision to remain silent.

This line of questioning by the prosecutor in his direct examination of Smith disclosed to the defense that Smith's initial statement differed from his preliminary hearing testimony. In **Bazemore**, the Supreme Court specifically provided that defense counsel will be deemed to have had the opportunity for full and fair cross-examination of a witness that subsequently becomes unavailable, if the Commonwealth had disclosed the inconsistent prior statement to the defense "at any time prior to preliminary hearing cross-examination of [the] witness." **Bazemore**, 531 Pa. at 590, 614 A.2d at 688. As the prosecutor in this case disclosed the fact that Smith made differing

- 9 -

statements to police prior to his preliminary hearing cross-examination, the prosecution did not deny Appellee access to this evidence. As Appellee had the opportunity to extensively cross-examine Smith about the differences in these statements, but did not do so, the prosecution should not be deprived of the ability to present Smith's preliminary hearing testimony at trial.

We are not persuaded to reach a different result in considering the trial court's emphasis on the fact that the prosecution did not provide the defense with a copy of the recording or transcript of Smith's statements before the preliminary hearing. The decision in **Bazemore** and subsequent precedent does not require the prosecution to give a physical copy of the witness's statements to the defense before pretrial discovery has commenced pursuant to our rules of criminal procedure. We point out that Smith's statements were not yet discoverable at the time of Appellee's preliminary hearing. **See** Pa.R.Crim.P. 571(c)(3).[1]

Moreover, we also agree with the Commonwealth's argument that the trial court erred in finding that Smith's prior statements to the police constituted vital impeachment evidence. In **Cruz-Centeno**, this Court found that "[m]ere dissimilarities or omissions in prior statements…do not suffice as

---

[1] Appellee waived his arraignment in a signed statement in which he acknowledged that he had the right to file a "motion for Pre-Trial Discovery and Inspection" within fourteen (14) days following the date of [his] Arraignment," which was set at October 15, 2017. Waiver of Arraignment, 8/4/17, at 1. **See also** Pa.R.Crim.P. 571, cmt. (stating "[n]othing in this rule is intended to preclude judicial districts from providing written notice of the arraignment to the defendant at the conclusion of the preliminary hearing when a case is held for court").

impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements." ***Cruz-Centeno***, 668 A.2d at 544.

In this case, Smith's initial refusal to name the other individual involved in the arson was merely an omission that would not have cast doubt on his preliminary hearing testimony. Upon his arrest, Smith admitted to committing the arson, but clearly and repeatedly suggested to Detective Rodick that he had an accomplice. However, Smith initially refused to incriminate the individual, to whom he felt a sense of loyalty. Specifically, Smith indicated that he "owed" the person for taking care of his elderly parents and was adamant that he would keep his "mouth shut." As a result, Smith's subsequent decision to name Appellee as his accomplice in his second statement to police constituted additional information that Smith did not disclose during his first interview.

As the prosecution did not deny the defense access to "vital impeachment evidence" and the defense had a full and fair opportunity to cross-examine Smith at the preliminary hearing, the trial court abused its discretion in granting Appellee's motion to preclude the Commonwealth from admitting this testimony at trial.

For the foregoing reasons, we reverse and remand for further proceedings.

Order reversed. Remand for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2019