J-S34005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICARDO ALLEN SNIPE, JR. | : | |
| | : | |
| Appellant | : | No. 1479 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 16, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001883-2021

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: January 4, 2024**

Ricardo Allen Snipe, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following the revocation of his probation. Upon careful review, we affirm.

On May 4, 2022, Snipe pled guilty before the Honorable Alexander P. Bicket to two counts each of persons not to possess firearms[1] and receiving stolen property.[2] Snipe waived his right to a presentence investigation and immediately proceeded to sentencing. At sentencing, Snipe's counsel explained Snipe's criminal history to the court to provide context for his prior record score and categorization as a "repeat violent offender" with respect to the persons not to possess firearms counts. **See** N.T. Plea and Sentencing

---

[1] 18 Pa.C.S.A. § 6105(a).

[2] **Id.** at § 3925(a).

Hearin, 5/4/22, at 10. At the age of 16, Snipe "fell under the thrall" of two men in their 20s and participated in a robbery/kidnapping. *Id.* at 10-11. In 2009, Snipe pled guilty with respect to his participation in the robbery/kidnapping and was sentenced to an aggregate term of 6 to 12 years' incarceration. Snipe was released on parole in January of 2021, after spending the majority of his teens and young adulthood in the state correctional system. *Id.* at 11-12. Snipe committed the instant offense within two months of his release.

Counsel stated to the court that Snipe's intent for possessing the firearms was to quickly sell them due to his economic hardship. *Id.* at 13. Counsel also explained that Snipe had drug and alcohol problems, for which he was receiving treatment at Mercy Behavioral Health, and that Snipe, at the time of sentencing, was employed. *Id.* at 13-14.

The court stated that the Sentencing Guidelines were high given Snipe's criminal history and that, in consideration of the guidelines and mitigating factors, the court would deviate below the guidelines. *Id.* at 17. Judge Bicket sentenced Snipe to three years of probation, with the first two years to be served on house arrest.[3] *Id.* at 18-19. Additionally, Snipe was required to follow the recommendations of mental health and drug and alcohol providers and pay restitution of $360.00 to the victim, as well as court costs. *Id.* at 19.

---

[3] The court sentenced Snipe to three years of probation, with the restrictive condition that he be placed on electronic monitoring and home confinement for the first two years, for all four counts. The probationary sentences were to be served concurrently. *See* Order of Sentence, 5/4/22.

On November 16, 2022, Snipe appeared before Judge Bicket for a violation of probation (VOP) hearing.[4]  The court heard the following with respect to Snipe's technical violations:

> Starting with the violations, Your Honor, on September 27th of this year, Mr. Snipe reported to the probation officer that he had a new job at Betsy Ann Chocolates, stating that he worked from 8:30 [A.M.] until 5 [P.M.].  He had left his house at 9:21 [A.M.], and returned at 11:41 A.M., and then left again from 1:51 P.M. to 5:27 P.M.
>
> The probation officer called Betsy Ann Chocolates to confirm the employment.  Both the secretary and the floor manager of Betsy Ann Chocolates reported that Mr. Snipe was not hired.  The probation officer called Mr. Snipe and asked where he was, and he replied [that he was] at work.  The Probation Office noted that he had unauthorized leave also on September 29th from 5:55 P.M. to 12:38 A.M., and on [September 30th] of this year from 5:33 A.M. to 11:41 P.M.
>
> The probation officer notes that Mr. Snipe has a history of failure to report a change of employment status and continues to leave as though he were going to work.  Back in June, on June 28th of this year, Mr. Snipe reported that he had a job with Waste Management, but never reported leaving his reported construction job.  He continued to leave through[out] the windows [of time] that were given to him on electronic monitoring [(EM)] daily.
>
> On August 2nd of this year, the probation officer learned that Mr. Snipe was starting a new job at Center Pizza Slice Shop.  Mr. Snipe failed to have the employer contact the probation officer as requested but did send a picture of the work schedule.  And I should explain, Your Honor, that when a person is on [EM] and they have windows for work, they are required to provide their full weekly schedule to the officer in order for them to put in those windows for the week.  Mr. Snipe continued to send pictures of his schedule each week.

---

[4] *Gagnon II* violation hearing.  Snipe had a *Gagnon I* violation hearing on October 7, 2022, in front of a hearing officer.

The probation officer was able to meet with the owner of Center Slice Pizza Shop on August 25th, and [the] owner reported that Mr. Snipe was let go [from] the job on August 12th when he clocked in, did no work[,] and left a short time later.

On August 12th, he was gone from 12:57 P.M. to 22:27 P.M.  He failed to report losing this job and left on a window on August 14th from 10:59 A.M. to 11:36 A.M., and again from 12:14 P.M. to 7:57 P.M.

The probation officer questioned Mr. Snipe about this when the probation officer learned of his firing from the pizza shop on August 25th.  Mr. Snipe was then honest and reported that he had been hired by Frank's Pizza on August 15th, so he had started a job at Center Avenue Slice Pizza Shop, then went to Frank's Pizza Shop without notifying the probation officer, and continued to send work schedules.  The probation officer was assuming that he was still working at Center Avenue Slice Pizza.

The rules were explained to him again as well as his requirements [with respect to] EM windows.  Also, the probation officer notes that on August 25th, there was conflict with Mr. Snipe's mother about the living arrangements, and he admitted at that time to smoking crack occasionally, along with using medical marijuana.

He reported to the Probation Office for a drug screen on August 26th, and submitted a sample that tested positive for cocaine and marijuana.  He was then referred for drug and alcohol evaluation and any recommended treatment, but he did not meet the criteria for inpatient treatment, and Mr. Snipe declined to participate in outpatient counseling.

The probation officer recently learned that Mr. Snipe was fired from Frank's Pizza Shop on September 3rd.  He again failed to report this to the officer and continued to leave on [EM] through his given windows.

Additionally, Your Honor, there are also times that he was not authorized to leave on September 4th.  He was gone for a couple of hours from 11 [A.M.] to 1 [P.M.], 1 [P.M.] to 4 [P.M.,] and as well as on September 26th, he left at 2:20 P.M. and did not return until 7:40 [P.M.].  Additionally, on September 9th, he was absent from 11:00 A.M. for about 45 minutes and then again from 3:17 P.M. to 10:17 P.M. on that day.

N.T. VOP Hearing, 11/16/22, at 4-8.

The court also heard from a representative from Justice Related Services (JRS), responsible for coordinating mental health and substance abuse services within the criminal justice system, that JRS recommended Snipe attend inpatient drug and alcohol treatment to treat his addictions. *Id.* at 9-10. The JRS representative further testified that Snipe had a referral for inpatient treatment for between 30 and 120 days, depending on his progress. *Id.* at 11. JRS also informed the court that Snipe was diagnosed with generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), and cocaine abuse. *Id.* at 12.

Snipe personally addressed the court. He admitted to his drug addiction and asked for the chance to get help for his drug addiction and mental health and learn how to do daily adult tasks that he never had the opportunity to learn. *Id.* at 13-14. Snipe stated that he needs the "skills to be successful, because [he] is not a waste of life. [He is] not a throwaway. [He is] intelligent. [He is] smart, and [he is] sorry." *Id.* at 14.

Finally, the court heard from Cindy Elsesser, Snipe's mother, who asked that Snipe not be incarcerated again, but that he be given an opportunity to learn how to function and adapt to the world. *Id.* at 15-16. She also asked the court to send Snipe to an inpatient treatment center so that he can get help for his mental health and addiction problems. *Id.* at 19.

Ultimately, the court found Snipe to be in technical violation of probation and sentenced him to 3 to 6 years' incarceration for each count of persons not to possess firearms and to 1 to 2 years' incarceration for each count of

receiving stolen property, all to run concurrently, for an aggregate sentence of 3 to 6 years' incarceration.

Snipe filed a timely post-sentence motion for modification of sentence on November 21, 2022. The court denied Snipe's motion on November 23, 2022. On December 16, 2022, Snipe filed a timely notice of appeal, followed by a timely court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Snipe sets forth the following issue on appeal:

Did the trial court abuse its discretion in sentencing [] Snipe to an aggregate revocation sentence of 3-6 years' incarceration where it failed to consider the protection of the public, the gravity of the underlying offenses and the technical violations at issue, and the character, personal history, and rehabilitative needs of [] Snipe, in violation of 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief, at 5.

Our standard of review is well-settled:

In an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed. Further, revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

*Commonwealth v. Shires*, 240 A.3d 974, 977 (Pa. Super. 2020) (citations and quotations omitted).

Snipe challenges the discretionary aspects of his sentence. Such a claim is not appealable as of right; rather, a defendant's appeal is considered a

petition for permission to appeal. ***Commonwealth v. Williams***, 562 A.2d 1385, 1386-87 (Pa. Super. 1989) (en banc). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015). The existence of a substantial question must be determined on a case-by-case basis. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa. Super. 1995).

In the instant case, Snipe filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included the requisite Rule 2119(f) statement in his brief, and, thus, has met the first three requirements for review. ***See*** Appellant's Brief, at 13-18. Therefore, we will determine whether Snipe has raised a substantial question. ***See Swope***, ***supra***. In his Rule 2119(f) statement, Snipe contends that the trial court did not fashion an individualized sentence, did not consider the safety of the public, did not consider that probation violations were technical in nature, did not consider his history of mental health and drug addiction, and did not consider his rehabilitative needs. ***See*** Appellant's Brief, at 14, 16-17. Moreover, Snipe

asserts that application of the Sentencing Guidelines was contrary to the fundamental norms of sentencing. *Id.* at 15.

This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question. *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). In addition, "a claim that a particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that we should review." *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006). Finally, we have held that if a sentence does not align with the protection of the public, gravity of the offense, and an appellant's rehabilitative needs, it raises a substantial question. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 27 (Pa. Super. 2017). Accordingly, we will consider the merits of Snipe's claim.

Our standard of review of the discretionary aspects of a sentence is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Here, Snipe focuses his argument on his claim that the trial court failed to consider his personal history and rehabilitative needs. Snipe argues that

the court failed to understand his "specific rehabilitative needs and . . . need for mental health and drug treatment when fashioning the revocation sentence." **See** Appellant's Brief, at 19. Snipe further suggests that, rather than recognizing the detriment incarceration can have on a person's mental health and that it would not really encourage Snipe to address his addiction issues, the court focused only on the technical violations and Snipe's failure to appreciate the "gift" of his original sentence. **See** Appellant's Brief, at 22-23 ("[The] trial court repeatedly and exclusively focused on the seriousness of the original offense and its impression that [] Snipe 'thumbs his nose at a gift of a sentence.'"). The Commonwealth, in opposition, argues that that the court was fully informed of Snipe's circumstances and that the revocation sentence was "consistent with the protection of the public and [Snipe's] inability to conform his conduct to the rules of probation." **See** Appellee's Brief, at 13.

From the outset we are cognizant that "[u]pon revocation [of probation] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, [with] due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.A. § 9771(b). However, the trial court is limited with respect to imposing a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

*Id.* at § 9771(c).  In addition, "[t]here shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation."  *Id.* at § 9771(d).

Instantly, the court detailed its concerns regarding Snipe's ability to comply with probation conditions at the VOP hearing to Snipe's mother, stating:

> He got a gift.  He got 36 months of probation with two years of that on electronic home monitoring.  And in the first four months of his electronic home monitoring, he was absolutely unable to comply with any of the conditions.  He couldn't stay at home, he lied to his probation officer about the jobs that he had[,] and he did drugs.  I don't know how else I could protect society from somebody who pled guilty to possession to firearms.  And looking at the [C]riminal Information, I see that he was a danger to other people with respect to that case.  I don't know how I get around putting him on probation again or electronic home monitoring again when he's absolutely incapable of complying with any of the conditions.  I don't know how I do that.

N.T. VOP Hearing, 11/16/22, at 17. The court continued:

> And nothing gives me less pleasure to incarcerate people who have mental health and drug addiction problems, but I think him being there in the system, there is help to be [had] if he wants to have it.  And it just seems that I'm spinning my wheels here and not protecting society when he thumbs his nose at a gift of a sentence in May [] of this year.
>
> ***
>
> In May of this year, on so many occasions.  I just don't know what else to do.

- 10 -

*Id.* at 19-20. Ultimately, the court gave the following reason for its sentence:

> I understand what you're telling me, sir, I just don't think that you're capable of following instructions, following requirements and rules of house arrest and probation. I'm going to revoke your sentence at 2021-1883[.]

*Id.* at 25.

We discern no abuse of discretion by the trial court. The above explanation supports the conclusion that that trial court believed that revocation of probation and the imposition of a new sentence of incarceration was "essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c)(3). The VOP hearing transcript reveals that Snipe blatantly disregarded the terms of his probation on numerous occasions, beginning just months after the imposition of his initial sentence. Snipe did not report job changes, did not update his work schedule as required, and repeatedly had unauthorized leave identified through his monitoring device. *See* N.T. VOP Hearing, 11/16/22, at 4-8. In addition, Snipe admitted to his probation officer that he was "smoking crack occasionally, along with using medical marijuana." *Id.* at 7.

Though Snipe's parole violations were technical in nature, it does not follow that they cannot support a sentence of incarceration. As this Court has often held, technical violations can support revocation and incarceration when "such violations are flagrant and indicate an inability to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007). The record supports the trial court's determination that Snipe's rehabilitative

- 11 -

needs are outweighed by the necessity of the court to protect the public and vindicate its authority. Therefore, we conclude that the trial court did not abuse its discretion when it sentenced Snipe to an aggregate term of 3 to 6 years' incarceration after it revoked his probation.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/4/2024