J-S40043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACQUELYN WALKER | : | |
| | : | |
| Appellant | : | No. 1018 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 2, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005627-2021

BEFORE:   NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED MAY 17, 2024**

Appellant, Jacquelyn Walker, entered an open guilty plea to murder in the third degree, two counts of aggravated assault by vehicle, five counts of recklessly endangering another person, and a summary count of duty of driver in emergency response area, arising from a fatal accident on Interstate 76 in Lower Merion Township in Montgomery County.[1] After holding a sentencing hearing with multiple witnesses, the Honorable William R. Carpenter of the Court of Common Pleas of Montgomery County imposed an aggregate term of 12 to 24 years' imprisonment. Appellant argues that the sentence imposed was an abuse of the trial court's discretion. After review, we find no abuse of discretion and therefore affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c), 75 Pa.C.S. § 3732.1(a), 18 Pa.C.S. § 2705, and 75 Pa.C.S. § 3327, respectively.

The sentencing court provided a complete recitation of the underlying facts of the case, as follows:

On October 13, 2022, Appellant entered an open guilty plea to the above-mentioned charges. The open guilty plea incorporated a sentencing cap of 12 to 24 years' imprisonment. (N.T., Guilty Plea, 10/ 13/22, p. 3-4). After a thorough colloquy, this Court accepted Appellant's plea as knowing, intelligent, and voluntary. ***Id***. at 27. By way of a brief factual recitation, Appellant admitted, *inter alia*, that on July 24, 2021, a Belmont Hills fire truck had responded to an accident scene involving two cars in the westbound lane of Interstate 76, at mile marker 335. ***Id***. at 17. Its lights were activated and parked in the right lane of the roadway to protect the crash vehicles, which were both parked on the berm. ***Id***. Fire personnel exited the truck and placed traffic cones in the right lane of travel as a warning to motorists. ***Id***. At about 3:06 a.m., Troopers Michelle Naab and Jarred Burnett of the Pennsylvania State Police responded to the scene. ***Id***. The state police troopers' marked vehicle, with overhead emergency lights activated, was parked in the right travel lane in front of the Belmont Hills fire truck. ***Id***. at 18. Members of the Belmont Hills Fire Department were standing on the right berm of the roadway next to the fire truck. ***Id***. at 19. Trooper Burnett was standing on the driver's side of one of the vehicle[s] involved in the initial crash. ***Id***.

At this moment, Appellant drove her 2004 Jeep Grand Cherokee, going westbound, over the rumble strips and into the right berm. ***Id***. at 19, 22. She entered the active emergency response area, and her jeep proceeded between the Belmont Hills fire truck and the right concrete barrier. ***Id***. at 19. Appellant struck three members of the Belmont Hills Fire Department. ***Id***. Appellant's jeep continued westbound until it struck the rear of one of the vehicles involved in the initial crash, propelling that vehicle into the highway. ***Id***. Trooper Burnett was struck in the course of that crash. ***Id***.

Belmont Hills Firefighter Thomas Royds was found unconscious and unresponsive. He later died of his blunt force injuries. ***Id***. at 19-20. Belmont Hills Firefighter Alex Fischer, was also found unconscious with serious injuries including a broken femur, broken pelvis, and broken ribs. ***Id***. at 20. The third Belmont Hills Firefighter Samuel Shaffer was unconscious and sustained serious injuries to his head, including an orbital fracture, a concussion,

lacerations, and a brain bleed. *Id*. He sustained further injuries to his right leg. *Id*. Pennsylvania Trooper Burnett was unconscious and was treated for a concussion and injuries to his neck, hip, pelvis, and elbow. *Id*. at 20-21.

An investigation of the scene showed that there was no roadway evidence of pre-impact braking by Appellant, and a post-crash investigation conducted on Appellant's vehicle revealed that the vehicle was in very poor condition. *Id*. at 22 - 23. In particular the braking system was in bad condition for a long period of time, and that the driver of the vehicle would have known there was a serious issue. *Id*. at 23.

In the approximate two and a half hours prior to the fatal crash, Appellant had been separately stopped by three New Jersey police departments. *Id*. One stop was for driving without her headlights being activated, the second stop was for an inoperable brake light, and a third stop was for an inoperable rear registration plate, two of her three brake lights were inoperable, and speeding. *Id*. at 23-24. Appellant provided a statement to police that, *inter alia*, due to the condition of her brakes, she adjusted the way she drove so that she could stop the vehicle. *Id*. at 24. Additionally, she related that at the time of the crash she tried to hit the brakes but they did not work. *Id*. at 25.

On March 2, 2023, a sentencing hearing was held. The Commonwealth presented the testimony of Lieutenant Charles Burckhardt of the Pennsylvania State Police as an expert crash reconstructionist. (N.T., Sentencing Hearing, 3/2/23, p. 6-7). The lieutenant first detailed the scene as it would have appeared to Appellant on the night of the accident. The roadway from mile marker 335.8 to 335.1 where the crash occurred, had a clear and unobstructed line of sight. *Id*. at 8. He reviewed camera footage from the Pennsylvania State Troopers' vehicle. *Id*. at 9. As the troopers' vehicle approached the emergency area, it was clearly visible as a[n] emergency response area. *Id*. at 10. There was emergency lighting and the fire department personnel on scene were wearing reflective vests. *Id*. Approaching closer, the right lane was blocked by [a] Belmont Hills Fire Company truck. *Id*. The firetruck was adorned with reflective conspicuity tape along the back and sides, which when headlights hit it at nighttime, it would have been very visible. *Id*. at 10-11. There were four orange cones, also adorned with reflective conspicuity tape, directing the right lane westbound traffic to the left lane of travel. *Id*. at 11. As Troopers Naab and Burnett arrived on scene, the footage showed

several fire personnel all wearing reflective traffic safety vests and markings around their feet and ankles from additional striping. *Id*.

Lieutenant Burckhardt determined that Appellant steered her vehicle onto the right berm, traveling at a high rate of speed towards the several pedestrians there. *Id*. Appellant drove straight through the pedestrians and into the rear of one of the crashed vehicles. *Id*. at 12. She would have had to cross a rumble strip before she went into the berm, which produces a physical and audible warning to a driver. *Id*. at 13. Appellant would have been warned with this physical and audible warnings twice; once, as she drove her vehicle's passenger side tires over onto the berm, and a second time when her driver's side tires fully drove into the right berm. *Id*. The lieutenant investigated Appellant's vehicle braking system. He testified that it was in such disrepair that it was rendered inoperable. *Id*. at 11.

At the time of impact, the footage shows that Firefighter Fischer struck the rear of the marked state police vehicle very forcefully. *Id*. at 14-15. Firefighter Royds was struck and propelled into Trooper Burnett, and both became engaged in a post-impact tumbling sequence. *Id*. at 15. The impact on Firefighter Royds was so forceful that he was literally knocked out of his shoes. *Id*. at 17. Appellant's vehicle struck the rear of the vehicle in the initial crash. *Id*. at 15. The rear of that vehicle [was] crushed though the trunk area and the rear window was crushed. *Id*. Lieutenant Burckhardt noted for the Court that Appellant's front driver's wheel was no longer moving, which was due to the damage to the front end of her vehicle which was crushed inward and impinged the front tires, which effectively made them braking. *Id*. at 15 - 16. He contrasted this to the rear tires, which continued to rotate freely despite her rear brake lights being activated. This indicated there was no [braking] system. *Id*. at 16.

The Commonwealth also presented the victim impact testimony of Thomas Royds-Helverson, Jr., the son of the deceased victim, Firefighter Royds; Tracey Helverson, the deceased victim's wife; William Royds-Helverson, the deceased victim's son; Firefighter Alex Fischer; Firefighter Sam Shaffer; Michael Shaffer, Sam's father; Kevin Kelley, a captain with the Belmont Hills Fire Company; Morey Averill, a firefighter that was on scene the night of the accident; and Karen Averill, Morey's mother.

The defense presented the testimony of Brad Hall, Appellant's son. *Id*. at 62. He wrote a letter in support of his mother, which he

read to this Court. He explained that his mother had a difficult upbringing. She lost her father to suicide at age 13, and after his death she took on a lot of responsibility of helping to raise her younger sister. *Id*. at 62. Her mother suffered from mental illness and was an alcoholic. *Id*. Appellant was sexually assaulted and gave birth at 14 years old. *Id*. Despite these tremendous obstacles, his mother never took her anger out on the world, but instead became empathetic to help others in difficult situations. *Id*. at 62-63. Mr. Hall described that as a single mother working several jobs she always found time to give him a good childhood. *Id*. at 63. Mr. Hall acknowledged that what happened on July 24, 2021 was a tragic accident and told this Court that his mother relives it every time she closes her eyes. Knowing that she caused harm to not just those directly involved but to the families for their suffering and loss eats away at her soul. *Id*.

Alana Hook read a letter prepared by Ms. Padro, Appellant's older sister. *Id*. at 64. Ms. Padro's letter also described Appellant's difficult upbringing with parents that suffered mental health challenges. *Id*. at 65. She expressed that despite the challenges Appellant has faced in her life she was a good person with a kind heart. *Id*. She provided many examples of Appellant's kindness. *Id*. at 66. Ms. Padro expressed Appellant's statement of intense remorse and her immense sorrow for the victims and their families. *Id*.

Defense counsel admitted a report by Dr. Gutman; a report from Ms. Hook; a letter from Joi Honer, Appellant's sister; and a letter from her friend, Bob Grohs. *Id*. at 67-68. Appellant exercised her right to allocution. *Id*. at 69. She stated as follows:

> These words are not random. I wanted to speak to Thomas Royds' families - - both of them - - with what my heart wants to say. And I wrote them down because I know I'm not going to be able to get through this, and I'm sorry.
>
> Ever since July 24th almost three years ago, I'm sure you've gone over in your mind, everyone, that morning every minute, sometimes every second, knowing Tom won't be with you, only in spirit. His first family waiting for him to come home and spend time with them after he's been out on a long day saving people and doing things he loves to do. And Tom's second family, his brothers and sisters at the firehouse, with a special bond, no one will ever take Tom's place. I know that. And he's always going to be missed.

> Please know that there is never going to be a day in my life that I wish I could take back those five seconds and have Tom and his men step back a few inches, or that I was never even there. I also want Jarred Burnett, Sam Shaffer, and Alex Fischer - - I'm sorry - - to know that if I could take away the pain they went through, and all the troopers and firemen who witnessed one of their own leave this world, I'm truly, truly, sincerely sorry.
>
> I have a good heart and I never have any bad thoughts. I do my best to make people smile. My intentions were never to hurt anyone. I've been in a fog from hell ever since Thomas Royds was taken.
>
> Please know I'm not trying to make this devastating accident any softer. My wish is only to have Tom's family not hate me forever. I'll pray for this for the rest of my life regardless of the outcome.
>
> For everyone involved in this, I'm truly sorry. And I don't have any more. I'm sorry. *Id*. at 69 - 70.

*Id*. at 69-70.

Defense counsel presented argument and detailed Appellant's difficult life experiences. Counsel brought to the Court's attention that Dr. Alisa Gutman, a clinical psychiatrist, who prepared a report on Appellant's behalf as an aid in sentencing, described Appellant as having suffered post-traumatic stress disorder and the pain she would have experienced on a daily basis having raised a child who was the product of a sexual assault. *Id*. at 73. Counsel stated that Appellant had also developed an alcohol dependence for which she sought inpatient treatment. *Id*. at 74. She suffered constant money and housing issues throughout her life, and had several abusive romantic relationships. *Id*. Counsel emphasized the testimony presented on Appellant's behalf, that she is a good person with a kind heart. *Id*. at 75. Further, counsel noted Appellant's sorrow for the victims and harm she caused. *Id*. Moreover, counsel pointed to Appellant's remorse and her taking responsibility for her actions. *Id*. at 76. Defense counsel asked this Court to sentence Appellant at the bottom of the standard range for third-degree murder of six years, and at the bottom of the standard range for the aggravated assaults. *Id*. at 77.

The Commonwealth next presented argument. The Commonwealth stated that this was an accident that only

happened because of the choices that Appellant made. This accident was made worse by the number of victims that were involved. *Id*. at 78. The Commonwealth requested that a sentence at the cap of 12 to 24 years be[…] imposed. *Id*.

Trial Court Opinion, 2-9.

The sentencing court explicitly noted it had the "benefit of a presentence investigation and report," which it had "carefully considered." N.T. 3/2/23 – Sentencing, 82. It also noted specifically that it had considered the mitigation report, letters that had been submitted by counsel, the sentencing code and the sentencing guidelines in formulating its sentence. *Id*. It also specifically noted Appellant's background as described in the various reports, the difficult circumstances she had dealt with, the gardening business she had built, and her physical and mental condition, including the fact that, at sentencing, she was confined to a wheel chair. *Id*. The court stated that it believed a "big aspect of this case points to the question of who protects the protectors? Who protects those first responders who are willing to expose themselves to possible harm or death to protect us?" *Id*. at 83. "[T]hey should not have to be exposed to sustained reckless behavior amounting to malicious conduct almost certain to cause death or serious bodily injury such as the conduct of this defendant." *Id*. It answered its own question by concluding that "first responders can only be protected by the Court," and that it could only do so by imposing "appropriate punishment for this type of malice criminal conduct." *Id*. at 84.

The sentencing court acknowledged that Appellant had provided a voluntary statement at the time of the incident and ultimately entered a guilty plea. However, "the guilty plea came only after all pretrial issues had been litigated and resolved against her and [a] firm trial date had been scheduled." N.T. 3/2/23 – Sentencing, 84. Moreover, her plea admitted to having acted with malice, which is a "wickedness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating an unjustified disregard for the probability of death and great bodily harm." *Id*. at 85. Nonetheless, the court believed Appellant "is remorseful" and "has a post-traumatic stress disorder." *Id*. at 85-86.

The court concluded that while Appellant's "background is sad and unfortunate," it did not "explain or justify her careless, reckless and malicious mind on the day in question." N.T. 3/2/23 – Sentencing, 86. It found that a sentence of total confinement was necessary because of the seriousness of the crime and the need to protect the public, as were consecutive terms to reflect the number of victims. *Id*. at 86-87.

It imposed a standard range term of 10 to 20 years' imprisonment for murder in the third degree. It imposed consecutive standard range terms of one to two years' imprisonment for each of the convictions of aggravated assault by vehicle. On each of the five reckless endangerment convictions, the court imposed a term of one to two years' imprisonment to run concurrently to each other but consecutively to the sentence for murder in the third degree. It imposed no further punishment on the summary offense. The aggregate

term imposed was 12 to 24 years' imprisonment. N.T. 3/2/23 – Sentencing, 87-88.

Appellant filed a timely motion for reconsideration, which was denied on March 14, 2023. Appellant then filed a timely appeal.

The single issue before this Court, as put forth in Appellant's Rule 1925(b) Statement, is as follows:

> The aggregate sentence of 12 to 24 years imprisonment imposed by the trial court is contrary to the fundamental norms of the sentencing process in that it was unduly harsh since the length of the sentence was excessive and was based exclusively on the facts of the instant case while failing to give adequate consideration of defendant's genuine display of remorse, her difficult childhood, which included her father's suicide, her mother's alcohol abuse, and an incident in which she was raped at age 14 and that resulted in her becoming a teenage mother, as well as her exposure as an adult to domestic abuse and the abuse of her daughter, and her struggles with PTSD, alcohol abuse (and brain damage resulting from it), and homelessness[.]

Appellant's Rule 1925(b) Statement, filed on May 1, 2023.

Appellant's claim that the sentence imposed was "unduly harsh" because the court allegedly failed to give "adequate consideration" to her history and show of remorse and imposed terms that were "excessive" and contrary to "fundamental norms" based "exclusively on the facts of the instant case" is a challenge to the discretionary aspects of her sentence:

> Challenges to the discretionary aspects of sentence are not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a

> separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. ***Id.*** An appellant must satisfy all four requirements. ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

***Commonwealth v. Miller***, 275 A.3d 530, 534 (Pa. Super. 2022), ***appeal denied***, 302 A.2d 626 (Pa. 2023).

Appellant satisfied the first two requirements. Thus, we turn to the Rule 2119(f) statement included in her brief to discern whether a substantial question has been raised.

We determine whether there is a substantial question on a case-by-case basis. ***Commonwealth v. Crawford***, 257 A.3d 75, 78 (Pa. Super. 2021). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." ***Id.***, 257 A.3d at 78-79 (*quoting **Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018)) (brackets omitted). A substantial question is presented where:

> … an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 585–586 (Pa. Super. 2010) (*quoting* *Commonwealth v. Bullock*, 948 A.2d 818, 826 n.6 (Pa. Super. 2008)) (citation omitted).

Appellant argues that the sentence imposed "amounted to the functional equivalent of a life sentence," because she is a 64-year-old disabled woman, and therefore was "at odds with the fundamental norms of the sentencing process." Appellant's Brief, 18. It further alleges that the sentence was the product of a "focus on the facts of the case, and the requisite mental state required for third degree murder with no regard for the substantial mitigation evidence presented by" her. *Id*. We find that Appellant has stated a substantial question permitting our review of her appeal. *See* *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question").[2]

_____

[2] We do not find that Appellant's citation of **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013), to assert that the sentencing court's discretionary decision to run some sentence terms consecutively raises a substantial question. **See** Appellant's Brief, 19. The "key … is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." **Mastromarino**, 2 A.3d at 588. An aggregate term of 12 to 24 years for an act of recklessness so wanton that it equated to malice and caused the death of one person and severe injuries to two more is neither "grossly disparate" to Appellant's conduct nor "patently unreasonable." **See** **id**. at 589.

Our standard of review of the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (quoting other cases).

Additionally, our review of the discretionary aspects of a sentence is confined by statutory mandate. *Johnson*, 125 A.3d at 826-827. More specifically, here, we may only vacate and remand for resentencing if the sentencing court's application of guideline sentence terms was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). "[I]t is clear that the General Assembly intended the concept of unreasonableness [for the purposes of Section 9781(c)] to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." *Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007).

In deciding whether a sentencing court imposed a sentence that was clearly unreasonable, we are to be guided by the considerations listed in 42 Pa.C.S. § 9781(d) – nature and circumstances of the offense and history and characteristics of the defendant; opportunity of sentencing court to observe the defendant, including any presentence investigation; findings upon which

the sentence was based; and sentencing guidelines – and whether the trial court properly considered the sentencing factors outlined in 42 Pa.C.S. § 9721(b) – protection of the public, gravity of the offense with respect to victim and community, and rehabilitative needs of the defendant. ***Walls***, 926 A.2d at 964; ***Commonwealth v. Velez***, 273 A.3d 6, 12 (Pa. Super.), ***appeal denied***, 283 A.3d 792 (Pa. 2022).

We cannot say that the sentencing court abused its discretion by imposing an aggregate term of 12 to 24 years' imprisonment where Appellant admitted to acting with such recklessness that it amounted to legal malice and which resulted in the killing of one person, caused severe injuries to two others, and endangered several more, all of whom were first responders who had clearly marked the road with sufficient warnings. The three sentence terms that make up the aggregate sentence are all within the standard range, and each are for a different victim: murder in the third degree of Firefighter Thomas Royds; aggravated assault by vehicle of Firefighter Alex Fischer; and aggravated assault by vehicle of Firefighter Sam Sheffer. ***See*** N.T. 3/2/23 – Sentencing, 4.

Appellant's implicit argument is that the severity of the crime and admitted malice with which she caused death and serious injury could not warrant standard range sentence terms.[3] As the sentencing court explained:

_____

[3] We acknowledge that the terms of imprisonment for reckless endangerment are the statutory maximum, but they do not alter the aggregate term. They
*(Footnote Continued Next Page)*

> The amount of pain and suffering that this defendant has caused is enormous. The terrible impact of her crime is certainly enduring. It's clearly apparent that the injuries could have been far worse; we have firefighters and the Trooper Burnett who escaped death or serious bodily injury just simply by inches that day. She acted recklessly and she acted with malice. She did not care about the rules of the road or the safety of others. She had no justification or excuse for her conduct.

N.T. 3/2/23 – Sentencing, 84-85. The court had the benefit of a presentence investigation report ("PSI") as well as additional material about Appellant, and so the law "views the sentence as appropriate under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010). ***See also Commonwealth v. Cruz–Centeno***, 668 A.2d 536 (Pa. Super. 1995) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable). When there is a PSI, we can "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth. v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

In imposing sentence, the court is required to consider the circumstances of the offense and the character of the defendant. It did so here, and explained how it viewed the evidence before it for each category. Importantly, it explicitly considered Appellant's evidence of good character, remorse and difficult circumstances, but, as it explained, at the hearing:

---

are to be served concurrently with each other and the term of one to two years for aggravated assault by vehicle on Alex Fischer before Appellant serves the term of one to two years for aggravated assault by vehicle on Sam Sheffer. N.T. 3/2/23 – Sentencing, 87.

> There are many people who suffer, unfortunately, from post-traumatic stress disorder from rape, robbery, aggravated assault, murder of a friend or a loved one, and these people can remain law-abiding and, again, follow the rules of the road and they do not act with malice toward other human beings.

N.T. 3/2/23 – Sentencing, 86. This was not "clearly unreasonable."

Essentially, Appellant asks us to reweigh the relevant evidence and provide greater weight to her difficult circumstances than to the effects of her bad decisions. That request is beyond our purview. **Commonwealth v. Bricker**, 41 A.3d 872, 876 (Pa. Super. 2012) ("The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors") (citation omitted). This Court will not reweigh "the significance placed on each factor by the sentencing judge." **Commonwealth v. Williams**, 69 A.3d 735, 742 (Pa. Super. 2013). **See also Walls**, 926 A.2d at 966-967 (holding that it was erroneous for this Court to "usurp[…] the sentencing court's discretion" where that court made an individualized sentencing decision).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/17/2024